Argued October 3, affirmed November 7, 1962

# STATE OF OREGON v. FLEMING

375 P. 2d 831

*Richard D. Barber,* Salem, argued the cause and submitted a brief for appellant.

*Hattie Bratzel Kremen,* District Attorney, Salem, argued the cause for respondent. With her on the brief was C. L. Marsters, Deputy District Attorney, Salem.

Before McALLISTER, C. J., ROSSMAN, PERRY, GOODWIN and DENECKE, Justices.

McALLISTER, C. J.

The defendant, Franklin Delano Fleming, and his co-defendant, Roy Allen Freeman, were indicted jointly in Marion county for the crime of assault and robbery while armed with a dangerous weapon. ORS 163.280. Both defendants were found guilty by the jury and Fleming was sentenced to the penitentiary for a term not exceeding 15 years, from which he appeals. Freeman was given a life sentence, with which we are not here concerned.

The sole question presented on appeal is whether the evidence as to Fleming's participation in the crime was sufficient to support the verdict of guilty against him.

It is admitted that on Sunday evening, March 26, 1961, Freeman while armed with a sawed-off shotgun robbed the proprietor of McFarland's Market in the Keizer district north of Salem, and that he went to and departed from the scene of the crime in a car driven by Fleming which was parked nearby while Freeman went into the market and committed the robbery. The narrow question presented is whether Fleming knew that Freeman intended to commit the robbery.

It appears from the evidence that Fleming first met Freeman in the restaurant in the bus depot at Salem, on Friday, March 24, 1961, where they were introduced by a waitress, Kay Thompson. The two men again met on Sunday morning, March 26, 1961, at Miss Thompson's apartment. About noon the two men left for Portland in Freeman's car, accompanied

by Miss Thompson and another waitress named Lou Ann Amburgey. After spending the afternoon in Portland, the quartet returned to Salem at about 7:00 o'clock in the evening.

The men let the girls out of the car at the bus depot and then drove to Miss Thompson's apartment, where they exchanged cars. They left Freeman's car, took Fleming's car and with Fleming at the wheel drove north to the Keizer district where the McFarland Market is located. After driving around in that area for a short while Fleming stopped the car near the market and waited with the motor running while Freeman went into the market and robbed McFarland.

When the men exchanged cars after returning from Portland Freeman had taken from the trunk of his car and brought with him in Fleming's car a black leather jacket, a shirt, a pair of black pants and a sawed-off shotgun. According to Fleming these articles were rolled into a bundle and he did not see the shotgun until Freeman returned to the car after the robbery. It is admitted that as Fleming drove toward the market Freeman put on the shirt and the black pants. It is also admitted that during the robbery Freeman wore the leather jacket and had a lady's silk stocking over his head, but the evidence does not disclose exactly when he put on the jacket and mask. Fleming testified that he had no knowledge of Freeman's intention to rob the market and knew nothing about the robbery until Freeman returned to the car carrying the shotgun and told him about the robbery.

After the robbery Fleming drove back to Salem by a circuitous route. On the way they stopped and Freeman hid the shotgun and clothing in an orchard. In Salem the men again changed cars and in Free-

man's car picked up the girls at the bus depot and returned to Portland. There they visited several bars where they spent some of the money taken in the robbery for drinks, and returned to Salem about 1:00 o'clock a. m. They left the girls at the apartment house and drove to the spot where Freeman had hidden the shotgun and clothing and picked up those items. Afterwards they returned to Salem and parted, each man taking his own car.

We have carefully reviewed the record and are satisfied that there was ample circumstantial evidence from which the jury could properly find a verdict of guilty against Fleming. Circumstantial evidence alone is sufficient to support the verdict. *State v. Duggan,* 215 Or 151, 333 P2d 907 (1958); *State v. Kader,* 201 Or 300, 270 P2d 160 (1954); *State v. Dennis,* 177 Or 73, 159 P2d 838, 161 P2d 670 (1945). The testimony of the defendant is to be considered by the jury in the same manner as the testimony of other witnesses. *State v. Tarter,* 26 Or 38, 37 P 53 (1894). The credibility of the witnesses is for the jury alone. *State v. Hibberd,* 123 Or 490, 262 P 950 (1928).

The jury was not required to believe Fleming's story that he was completely unaware of Freeman's intention to perpetrate the robbery until after the crime had been committed. The jury had the right to reject defendant's testimony as improbable and to convict on the circumstantial evidence. *State v. Ausplund,* 86 Or 121, 128, 167 P 1019 (1917); *Kitts v. State,* 153 Neb 784, 788, 46 NW2d 158 (1951); *State v. Shonka,* 3 Utah2d 124, 279 P2d 711, 714 (1955); *Randolph v. Commonwealth,* 190 Va 256, 56 SE2d 226, 229 (1949).

The judgment of the lower court is affirmed.