Argued July 23, affirmed August 26, 1971

STATE OF OREGON, *Respondent, v.*
WILLIAM ALLEN MILLER, *Appellant.*

487 P2d 1387

*Gerald R. Pullen,* Portland, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant appeals from conviction of first degree murder. ORS 163.010. He was jointly indicted with Homer Lee Denniston and Dennis H. Cole for the murder of a storekeeper during an armed robbery. He asserts that the trial court erred (1) in allowing defendant's tape-recorded statements in evidence; (2) in refusing to require a subpoenaed codefendant to testify as a witness in the presence of the jury after the codefendant, out of the presence of the jury, had invoked the protection of the Fifth Amendment to the United States Constitution against self-incrimination; and (3) in its refusal to give certain requested instructions on attempt to commit murder and abandonment of the crime.

The defendant testified that he and the two other men planned the armed robbery of the grocery store. During the robbery the store owner was shot several times and killed. Defendant said he had gone with Denniston to the store, went in alone and bought some gum, and came back out, telling Denniston he had decided that he didn't want to go ahead with the holdup. Denniston said "okay" and that he would do it alone. Defendant testified he stayed outside when Denniston went inside. He said that he saw Denniston strike the storekeeper and shoot him; that Denniston took money, ran out of the store, grabbed the defendant and told him to "come on." Defendant said that after seeing Denniston shoot the storekeeper he just didn't know what to do. He testified that Denniston did not give him any money taken in the robbery, but that he bought "stuff," including beer, for him.

Two 16-year-old boys testified that on the night of the crime, as they were going to the store, they

passed two men near the store, one of whom they both identified as defendant Miller. They finished their business at the store and as they were leaving saw someone peeking around the corner of the store. Suspicious, they circled the block and came back. The boy in the lead testified that through a window he saw three people in the store, one of whom was the storekeeper, who was being held up by the other two. The other two he identified as the defendant Miller and the other person whom they had just before passed on the street. The identification was based on the size of the men and the clothes they were wearing. He testified both robbers had stockings over their heads. The other boy saw only one person, with a stocking over his head, and did not see the storekeeper or the other person whom the first boy testified he could see. The boys ran to a telephone to call police.

Defendant Miller was in the custody of the Los Angeles police department when Detective Tercek of the Portland police department questioned him. During the course of the interview the defendant made two tape-recorded statements. The tapes were received in evidence after Detective Tercek had listened to them in the presence of the court, but out of the presence of the jury, and testified that they accurately related what was said.

(1). The defendant's first contention is that a proper foundation was not laid for receiving the tape recordings into evidence. The general rule quoted by defendant is from 29 Am Jur 2d 494, 495, Evidence § 436 (1967), which states that the strict foundation requirements for the admissibility of recordings are:

"* * * (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3)

establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement * * * ."[1]

In *State v. Reyes,* 209 Or 595, 636, 303 P2d 519, 304 P2d 446, 308 P2d 182 (1957), the court said:

"* * * [W]hen the accuracy of the recording device and the identity of the person speaking are fully established * * * the recording of an incriminating statement * * * is as much entitled to be received in evidence as a photograph of an object, a person or a place."

See also *Kruse v. Coos Head Timber Co.,* 248 Or 294, 300, 432 P2d 1009 (1967), and *State v. Dills; Stice,* 244 Or 188, 416 P2d 651 (1966).

■ It has long been established that a photograph is entitled to be received in evidence when a witness testifies that the photograph accurately depicts the object. We see no reason why the same rule should not be applied here. In *State v. Dills; Stice,* supra, the court indicated that common sense should be used in such matters. 244 Or at 198.

■ The testimony of the detective that the tapes are accurate is sufficient evidence for fulfillment of the first five of the seven tests repeated from the quotation in 29 Am Jur 2d at 494, 495, supra. The sixth and seventh tests were satisfied by other testimony at the trial. Also, the jury had an opportunity to com-

---

[1] No question of voluntariness of the statement is involved in this appeal.

pare the defendant's voice when he was on the witness stand with the voice on the tapes.

■ Under the facts of this case it was up to the jury to determine whether the tapes were accurate. That is what the court said in an identical situation in *Todisco v. United States,* 298 F2d 208, 211 (9th Cir 1961), *cert denied* 368 US 989, 82 S Ct 602, 7 L Ed 2d 527 (1962). *See also People v. Spencer,* 60 Cal2d 64, 31 Cal Rptr 782, 383 P2d 134, 143, *cert denied* 377 US 1007, 84 S Ct 1924, 12 L Ed 2d 1055 (1963), and *People v. Dupree,* 156 Cal App 2d 60, 319 P2d 39, 44 (1957), and Annotation, 58 ALR 2d 1024 (1958).

■ (2). The defendant contends that a codefendant whom he had subpoenaed should have been required to testify in the presence of the jury, even if it was only to claim his privilege against self-incrimination. Out of the presence of the jury the codefendant did claim the privilege and made it clear he would continue to do so. We considered this question in *State v. Mitchell et al,* 6 Or App 378, 487 P2d 1156 (1971), and decided it contrary to defendant's contention. The case at bar differs from *Mitchell* in that the indictment in this case lists the codefendant as a witness who appeared before the grand jury. Such was not the situation in *Mitchell.* Defendant contends here that the jury would see the codefendant's name on the indictment and speculate as to why he did not appear as a witness at the trial. If the codefendant had taken the witness stand it is clear he would have claimed the privilege, so the jury would have been left in a situation where it could have only speculated anyway.

■ (3). The defendant requested an instruction on the allegedly included offenses of second degree mur-

der and manslaughter, and on attempts to commit three grades of homicide. The court properly rejected this request. The defendant himself testified to the robbery and that the store operator was killed in it. This is robbery-first-degree murder. ORS 163.010 (1). The court also instructed on premeditated first degree murder and included offenses "to be safe." The instructions on the included grades of homicide were unnecessary, though harmless to defendant. *State v. Smith,* 1 Or App 153, 163-64, 458 P2d 687 (1969), Sup Ct *review denied* (1970). The defendant's requested instruction for "attempt" to commit any of three grades of homicide was inconsistent with the facts to which he had testified. He said the victim was killed by his companion during and in furtherance of the robbery. Therefore, by his own testimony and theory if defendant was attempting, as distinguished from committing, any crime, it was robbery not homicide.

■ The defendant excepted to the court's refusal of his request that the jury be instructed that if it found he had abandoned "an attempt to commit this crime" he should be acquitted.

Defendant's testimony was that after he had gone into the store and came back out, he told his accomplice that he wasn't going to go through with the robbery. He stated he remained outside the store and left with his companion after the robbery and murder were completed, and later had, at least, beer as a fruit of the robbery.

Speaking of withdrawal from and abandonment of a crime as a defense, Clark and Marshall says:

"The withdrawal must be something more than an expression of an intent to withdraw, made to his accomplices. *It must be accompanied by some af-*

*firmative effective action* \* \* \*." Clark and Marshall, Crimes 537, 538, § 8.11 (7th ed 1967). (Emphasis supplied.)

Taking defendant's story as a whole, if it is believed, his words and acts did not measure up to the standard of affirmative effective action.

Affirmed.