Argued September 23, affirmed December 27, 1971, petition for
rehearing denied January 26, petition for review
denied April 25, 1972

## STATE OF OREGON, *Respondent, v.*
## DENNIS MELVIN GOODIN, *Appellant.*

492 P2d 287

*Jack A. Gardner*, Eugene, argued the cause for appellant. With him on the brief were Jaqua, Wheatley & Gardner, Eugene.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Defendant, Dennis Melvin Goodin, was convicted by a jury of first degree murder in a trial which lasted over seven weeks. Defendant appeals, assigning 16 errors.

A summary of the complicated facts is required to understand the assignments of error. Defendant and others, including the murder victim, Paul DeGeorge, and two others indicted in the murder, Donnie Ray Gardner and Robert Bullard, were members of a

tightly-knit group allegedly formed to commit burg-
laries. Also members of this 'clique' at the time of
DeGeorge's death were Richard Hill, Charles Gardner
and Eugene Gardner. On September 26, 1968, the house
of the leader of this ring, Donnie Ray Gardner, was
burglarized. Gardner summoned a meeting of his group
as he believed that the burglar was among them. For
several days Gardner and others tried to find out who
had committed the burglary. Suspicion was centered
on DeGeorge, although at defendant's trial it de-
veloped that Bullard had, in fact, burglarized Gard-
ner's house.

DeGeorge's body was found October 5, having
been shot 12 times. The state's theory was that Gard-
ner, Bullard and defendant conspired to kill DeGeorge.
Considerable evidence was introduced, including testi-
mony that defendant had boasted of the shooting, which
pointed to defendant as the trigger-man.

Defendant first assigns as error the trial court's
refusal to grant a further continuance of the trial on
September 9, 1969.

We examine the trial court's decision of deny-
ing a continuance only to determine whether there has
been an abuse of discretion. *State v. Young,* 1 Or App
562, 463 P2d 374, Sup Ct *review denied* (1970); *State
v. Edwards,* 3 Or App 179, 471 P2d 843, Sup Ct
*review denied* (1970). Here, the court appointed
two attorneys for the defendant on June 30 and
July 2, 1969. The record further shows that an
investigator who started early in July also assisted
the attorneys in the preparation of the case. The trial
did not commence until September 9, 1969.

Plaintiff's counsel made motions for a continu-
ance on August 28, September 2 and September 9. On

September 4 the motion of the 2nd was granted and the trial date was extended to September 9.

■ In reviewing the affidavits in support of the motions and considering the length of time between appointment of counsel and trial, 71 days, we cannot say the defendant was prejudiced by the denials.

The second assignment of error concerns the court's refusal to compel the prosecutor to produce a material witness, Richard Alvin Hill.

■ The record reveals that defense counsel and his investigator did locate and speak with Hill in person to set up a meeting. Hill at some point changed his mind and avoided the appointment but was not prevented from keeping the appointment by the prosecutor. The claimed error was thus rendered moot.

Assignments of error three and four relate to the court's refusal to grant a mistrial because of failure by the prosecutor to disclose evidence and then his closing argument in which he aggravated the problem by stating:

> "I want to say to you in that regard that the law that controls prosecution of any criminal case in this day and age requires us to divulge to the defense any evidence consistent with the innocence of the defendant, and we have done so. * * *"

In actuality, the prosecutor had not done so with respect to certain evidence, the most important of which was tire tracks found at the scene of the murder.

■ However, the defense was able to present the exculpatory evidence in the presence of the jury through an effective examination of several witnesses. Thus, again, the withholding of the evidence and the misleading statement of the prosecutor were rendered

harmless. This is particularly true since the defense counsel immediately objected to the prosecutor's comment and the judge warned the prosecutor to discontinue this line of argument. It was therefore made apparent to the jury that the prosecutor's statement was inaccurate which, if anything, was favorable to the defendant.

■ Defendant next assigns as error the court's refusal to suppress a .22 caliber pistol taken from defendant's premises on October 31, 1968. The weapon was discovered in a search incident to a valid arrest, and thus the court's refusal to suppress was not erroneous.

■■ The sixth assignment of error concerns the admission of certain hearsay testimony by Rhea Connor of the statements allegedly made by Bobby Bullard on September 29. Defendant objected on the grounds it was hearsay but on appeal contends that the remarks were inadmissible because they were made prior to any possible conspiracy and thus inadmissible as an exception to the hearsay rule as declarations of a co-conspirator. The record, however, contains evidence that at a meeting on the evening of the September 26 burglary of Gardner's house, his "clique" decided to find and, it may be inferred, to punish the guilty individual. Bullard was not at the meeting but returned on September 29 and spoke with Gardner prior to making the statements which were objected to. Thus there was testimony showing that a conspiracy had been formed and Bullard had entered into it prior to his statements. Much of this evidence was already in the record prior to Rhea Connor's testimony. In any case, the order of proof is discretionary with the trial court. *State v. Gagnon,* 2 Or App 261, 465 P2d 737, Sup Ct *review denied* (1970).

■ The seventh assignment of error concerns remarks made by the prosecutor in his final argument. The prosecutor commented on the failure of Eugene Gardner, who had been brought from the penitentiary to Eugene at defendant's request, to testify. The prosecutor's comments were within the bounds of remarks held proper in *State v. Lincoln*, 250 Or 426, 443 P2d 178 (1968). The prosecutor next argued that great danger faced Richard Hill because he had become the state's witness. This remark was a response to the defendant's closing argument wherein the defendant's attorney asserted that Hill was in no danger. This was within the limits of fair advocacy. *State v. Oland*, 1 Or App 272, 461 P2d 277 (1969), Sup Ct *review denied* (1970).

■ The defense also objected to the prosecutor's inference that the defendant and Donnie Gardner were in the Oregon State Penitentiary together. While there was no testimony that they actually were in the penitentiary at the same time, there was evidence that both had been in the penitentiary and that they had known each other prior to the defendant's joining the Gardner gang in September 1968. The remark of the prosecutor was a comment on the evidence within the rule of *State v. Gill*, 3 Or App 488, 497, 474 P2d 23, Sup Ct *review denied* (1970):

> "Counsel in argument is permitted to comment on the evidence and to draw all legitimate inferences therefrom, provided he does not transcend the limits of professional duty and propriety. * * *"

■ The defense asserts that the prosecutor injected his own credibility into the evidence by stating that Hill had been advised to "Tell it the way it is. * * *" Absent abuse, the control of closing arguments

is left to the trial court judge, who has broad authority to control the conduct of the trial. *State v. Truxall,* 2 Or App 214, 467 P2d 643 (1970); *State v. Gill,* supra. There was no abuse here.

■ Defendant next contends that it was error for the trial judge to admit testimony from Richard Hill relating to his background—in particular, his marital status. The objections relied upon asserted that this was irrelevant and tended to endow Hill with too much credibility. However, an examination of the record shows that Hill's testimony was extremely lengthy and exhaustive. His past criminal activities involving dozens of crimes were brought out in detail both on direct and cross-examination. In view of this, we cannot say that a few preliminary questions determined the overall credibility of the witness. Absent abuse, this matter also is controlled by the trial judge. *State v. Hosmer,* 72 Or 57, 142 P 581 (1914). There was no abuse here.

The ninth assignment of error concerns another objection to the effect that the prosecutor improperly placed his own veracity before the jury. A witness testified that he last remembered seeing the deceased about October 1. Then the prosecutor asked:

"Q   Do you recall telling Officer Jacobson that the last time you saw DeGeorge was on Wednesday, October 2nd, about 1:30 in the afternoon?

"[DEFENSE COUNSEL]: I object to the question your Honor. * * *

"[PROSECUTOR]: * * * This witness has been interviewed by Officer Jacobson in connection with this matter, and also personally by Mr. Keutzer and myself, and his statement prior to this occasion has been the statement that I am reading to him now with reference to his prior statements on this matter."

The witness was then, over further objection, given a copy of his statement and conceded that he thought the statement was probably correct.

█ Defense counsel first objected on the grounds that the prosecutor was attempting to impeach his own witness with a prior inconsistent statement. Then, the objection was that the prosecutor was attempting to put his own credibility into the record.

ORS 45.590 provides:

"The party producing a witness * * * may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony * * *."

Most recently, this statute was cited in *State v. Green,* 3 Or App 411, 474 P2d 9 (1970),① in reaching a result similar to that reached here by the trial court. Furthermore, the court here nailed the matter down by instructing the jury that:

"* * * [E]ven if there were evidence in the case, which there is not at this point, that a witness had made a statement to Mr. Moore or Mr. Keutzer, or anyone else, at a previous time, this cannot be considered by you as evidence of the truth of the fact * * * the only evidence you are to consider * * * is that which is presented to you from the witness stand."

The tenth assignment of error involves hearsay testimony given by Gloria Johnson which related a statement made by Charles Gardner. Defense counsel objected to the question eliciting the hearsay on the ground that the utterer, Charles Gardner, was not a co-conspirator. The trial judge held a hearing out of the jury's presence and decided to allow the testimony.

---

① *See* State v. Gardner, 2 Or App 265, 467 P2d 125, Sup Ct *review denied* (1970), *cert denied* 406 US 972 (1972).

Counsel for defendant in his brief states:

"The state at no time offered any proof of Chuck Gardner's participation in the alleged conspiracy or the alleged burglary preceding the conspiracy * * *."

The record does not bear this out. Richard Hill testified that Charles Gardner was called to the meeting which followed the September 26th burglary of Donnie Gardner's house. Hill further testified that he and Charles Gardner had searched DeGeorge's autos and reported back to Donnie Gardner. Elva Rider, who was living with DeGeorge at the time of the burglary, testified that she accompanied Charles Gardner to Donnie Gardner's house on the night of the burglary. To show what occurred at the meeting, Connie Hill testified that following the meeting at Donnie Gardner's, the defendant and her husband returned and when the defendant was asked about the burglary he stated, "* * * I would hate to be the guy because he isn't going to be around when they find him."

■ Counsel for defendant mentions that because Charles Gardner was not indicted, he was not a co-conspirator. But, the general rule as stated in 22A CJS 1139, Criminal Law § 762, is:

"It is not necessary to render admissible the acts or declarations of a conspirator that he should have been indicted with the accused, or even that he should have been indicted at all. * * *"

■ There was ample evidence from which the trial judge could determine to allow the admission of the hearsay. His decision following a hearing is further upheld by the authority cited in our discussion of assignment of error number six, supra.[②]

_____

[②] *See also* Hansen v. United States, 326 F2d 152 (9th Cir 1963).

Defendant assigns as error the state's cross-examination of two defense witnesses, Michael Safley and Robert Bishop. Safley was briefly questioned by the defense and testified to threats made by Richard Hill against the deceased and also that Hill knew of DeGeorge's death prior to discovery of his body. The state was advised that Safley would claim the Fifth Amendment privilege when questioned about specific acts of crime committed with Richard Hill. After the state's motion to strike Safley's direct testimony was denied, the state was allowed, over objection, to ask Safley a question concerning a crime, which he refused to answer based upon the Fifth Amendment. Defendant urges that the overruling of his objection was error. Following discussion, the trial judge determined that Safley could testify for the purpose of showing his bias against Hill without violating the ORS 45.600[⊕] prohibition against impeachment by specific acts of misconduct.

A similar situation occurred when the prosecutor cross-examined Robert Bishop concerning the burglary of Donnie Gardner's house for the purpose of showing Bishop's favorable attitude toward Bullard and the defendant, as well as his bias against Hill. Over objections by the defense, several questions were asked of Bishop concerning the burglary.

The central objection which the defense raises is that the prosecutor should not have been permitted

[⊕] ORS 45.600:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."

to ask questions which he knew in advance would elicit the Fifth Amendment objection. By such tactics, the apparent guilt of the person testifying is possibly reflected, unjustifiably, on the defendant with whom he was associated. Defense counsel relies primarily on *State v. Johnson*, 243 Or 532, 413 P2d 383 (1966).

■ *Johnson* is distinguishable from this case, as are our recent decisions, *State v. Mitchell*, 6 Or App 378, 487 P2d 1156 (1971), and *State v. Miller*, 6 Or App 366, 487 P2d 1387 (1971). In *Johnson*, the district attorney called his *own* witness, who was a co-indictee, and asked questions which resulted in his claiming the privilege of the Fifth Amendment. The prosecutor then commented on this to the detriment of the defendant. In the case at bar the witnesses in question were called by the defense and asserted rights under the Fifth Amendment upon *cross-examination* by the state. This is a different situation than *Johnson* and the trial court did not abuse its discretion in controlling the limits of cross-examination allowed the prosecutor.

■ Defendant next complains that a hearsay conversation of Charles Gardner testified to by Richard Hill should not have been admitted. The particular statement complained of was made in the presence of the defendant, bringing it within ORS 41.900(3).①

The thirteenth assignment of error involves testimony given by Rhea Connor concerning activities and statements of Robert Bullard on September 26, 1968. Defendant first objected to the testimony on the grounds of relevancy and later complained that Bul-

---

① ORS 41.900 (3):

"A declaration or act of another, in the presence and within the observation of a party, and his conduct in relation thereto."

lard's remarks were prior to any evidence of a conspiracy and inadmissible as hearsay.

■ The material contested as irrelevant and prejudicial related to Bullard's burglary of Donnie Gardner's house and the division of the stolen money. The testimony also concerned the probable murder weapon brought back from Olympia, Washington, and Bullard's statement that the gun was to be picked up by the defendant. The testimony was relevant to the burglary and the resulting conspiracy which led to DeGeorge's death.

In assignment fourteen, defendant complains that the court erred in admitting, over a hearsay objection, testimony of Billie Joyce Ortis which related a statement Robert Bullard had made at her home in the presence of the defendant:

"A * * * But Mr. Bullard said that the gun —that he had used the gun before and wouldn't be ascared to use it again, referring to the gun Pinky [defendant] had on him at the time."

■ The main contention of the defense is that even though this statement was made in defendant's presence, the relevant exception to the hearsay rule⊚ applies only where defendant's silence is considered an assent to the declaration—that here, such silence was not assent. However, in looking at the circumstances and the remark, we find it to be evidence which may be received under ORS 41.900 (3). Defendant's known associate, DeGeorge, had been found shot with a .38 caliber weapon. Then, while the defendant was displaying a weapon described as a "Smith & Wesson .38," Bullard, who was involved with both DeGeorge and defendant, boasted that the defendant had used

⊚ ORS 41.900 (3).

this gun before. If untrue, a denial would have been in order, and the trial court's ruling was correct.

The fifteenth assignment arose when a defense witness, who was present when Bullard, defendant and the Ortises were together at the same meeting mentioned in assignment fourteen, testified that she had not seen the defendant exhibit a revolver. The prosecutor on cross-examination asked her:

"Do you use narcotics?"

After an objection by the defense counsel:

"[PROSECUTOR] : I think it's exactly relevant to her credibility, Your Honor, with reference to this particular incident and in general. * * *"

■ Counsel for the defendant objected to this as impeachment by a particular act of misconduct and cites *State v. Townsend,* 237 Or 527, 392 P2d 459 (1964). *Townsend,* however, concerned a cross-examination question which probed the defendant's revocation of parole in an earlier conviction. It had nothing to do with a condition which might affect his ability to remember a recent event, but rather went to his character through a searching of past misconduct. In the case at bar, the portion of the question which related to whether the witness was under the influence of drugs at the time she was testifying to might properly have been allowed—only to show the condition of her recollection. However, the general use of such a question should not have been allowed to impeach the witness. As stated in Annotation, 52 ALR2d 849 (1957):

"Although the authorities are somewhat conflicting, the rule supported by the majority of the cases seems to be that for the purpose of discrediting a witness, evidence is not admissible to show that he is a user of opium, morphine, or similar drugs, or to

show the effect of the use of such drugs, unless it is proven that the witness was under their influence at the time of the occurrences as to which he testifies, or at the time of the trial, or that his mind or memory or powers of observation were affected by the habit."

In looking at the witness's entire testimony, however, the defendant was not prejudiced by allowing this question. The witness in response did state that she was not under the influence of any drug during her observations. She stated that she had used "Nothing." Moreover, her testimony was greatly discredited by the balance of cross-examination which showed that her memory of the time and occurrences in question was totally lacking. In *State v. McLean,* 255 Or 464, 479, 468 P2d 521 (1970), the court said:

"* * * [I]n a case in which, despite some conflict in the testimony, there is substantial and convincing evidence of guilt and the error, if any, was either so technical in nature or so unsubstantial that this court can affirmatively find, as a practical matter, that there was 'little, if any, likelihood of having changed the result of the trial', this court may then, in its discretion, exercise its power to affirm the verdict and judgment of the trial court, notwithstanding the existence of such error."

Defendant's final assignment of error involves the cross-examination of Robert L. Bishop. Certain questions put to Bishop by the prosecutor were objected to as irrelevant and beyond the scope of direct examination. He also objected that this later led to the introduction of improper hearsay testimony. We agree with the trial court's rulings that the evidence was properly admitted.

Affirmed.