Argued December 1, affirmed December 27, 1971, petition for
rehearing denied January 26, petition for review
denied March 8, 1972

STATE OF OREGON, *Respondent, v.*
HOMER LEE DENNISTON, *Appellant.*

491 P2d 1189

*Howard R. Lonergan,* Portland, argued the cause and filed the briefs for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from a conviction of first degree murder. ORS 163.010. He was jointly indicted with William Allen Miller[1] and Dennis H. Cole for the murder of a shopkeeper during an armed robbery. He asserts the trial court erred (1) in not striking an in-court identification made by a witness who failed to identify him at a photographic showup four days after

---

[1] This court recently upheld Miller's conviction of first degree murder. State v. Miller, 6 Or App 366, 487 P2d 1387 (1971).

the holdup; (2) in denying a motion for new trial; and (3) in compelling Miller to answer questions pertaining to details of the robbery. A limited statement of the facts allows understanding of the issues raised by these assignments.

Two 16-year-old boys testified that on the night of the crime, as they were going to the victim's store, they passed two men near the store. One of the boys, Davis, looked back at the men just as the two looked back at him. The boys finished their business at the store and as they were leaving, saw someone peeking around the corner of the store. Suspicious, they circled the block and came back. Davis testified that through a window he saw the storekeeper being held up by two men. The two had stockings pulled over their heads, but by the size of the men and the clothes they were wearing he recognized them as the two he had just passed on the street. The boys ran to a telephone and reported the incident to the police.

Four days later both boys were called to the police station to view photographs of suspects. Neither Davis nor the other boy was able to identify Denniston's photo out of an array of six. Both later identified a picture of Miller. At trial, Davis identified Denniston as one of the holdup men he had passed on the street and later saw in the store. The other boy did not identify Denniston.

■ ■ Defendant asserts in his first assignment of error that the trial court erred in not striking the in-court identification by Davis "* * * on the ground that it's been tainted by showing him a picture of Homer Denniston." Defendant's reliance on the rule enunciated in *Simmons v. United States,* 390 US 377,

88 S Ct 967, 19 L Ed 2d 1247 (1968),[2] is misplaced. The common thread running through *Simmons* and its progeny—an alleged suggestive identification procedure which results in an extrajudicial identification that is likely to "taint" the in-court identification—is not present in this case. The police properly conducted the showing of the pictures.[3] No identification of Denniston's picture was made by Davis or the other boy.

■ Defendant actually attacks the credibility of Davis's identification. The failure to identify defendant from his picture only four days after the crime, the shortness of time in which the witness viewed the persons outside the store, and the variance between the description given the police on the night of the crime (Davis said the man he later identified as defendant had a "pock-marked" face, which he conceded at trial Denniston did not have) all possibly weaken the credibility of Davis's courtroom identification over a year after the crime. See, generally, Wall, Eye-Witness Identification in Criminal Cases 107-128 (1965). However, these factors affect the weight and not the ad-

---

[2] In Simmons v. United States, supra, the Court held:

"* * * [C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside * * * if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification * * *." 390 US at 384.

[3] Any inference defendant would have us draw regarding the "tainted" nature of the police identification procedure finds no support in the record. Both boys separately viewed the array of six photos. One was of defendant. The officer who conducted the showup testified that all photos were of the same type—colored Polaroid snapshots; all subjects were dressed in civilian clothes; and all were of the same race. He stated that in no way was defendant's photo singled out. The failure of either boy to identify Denniston tends to support that statement.

missibility of the identification evidence. Therefore, they are a matter for the jury's consideration. *State v. Landeros,* 20 NJ 76, 118 A2d 524, 528 (1955), *cert denied* 351 US 966, 76 S Ct 1025, 100 L Ed 1486 (1956); *Commonwealth v. Kloiber, Appellant,* 378 Pa 412, 106 A2d 820, 827, *cert denied* 348 US 875, 75 S Ct 112, 99 L Ed 688 (1954); *see State v. Fleming,* 232 Or 412, 375 P2d 831 (1962); 3 Wharton, Criminal Evidence 447, § 971 (Anderson, 12th ed 1955).

■ ■ Defendant grounded his motion for a new trial on the following testimony of the witness Davis, who defendant alleges testified falsely in stating his in-court identification was based on a recognition of the defendant at the scene of the crime rather than a recollection of defendant's photograph at the police showup.

"Q Mr. Davis, I show you a photograph marked Exhibit number 64 and ask if you have ever seen that before?
"A No, I have never seen this picture before.

"Q Do you recognize who it is?
"A Yes, I do.

"Q Who is it?
"A Mr. Deniston [sic].

"Q Do you know that you were shown this picture four days after the robbery and homicide that you testified to witnessing?
"A I didn't know I was shown it.

"Q Do you know also that you weren't able to identify at that time the picture of this man as being the participant in the robbery and homicide that you witnessed?
"A Yes.

"Q Do you have any explanation for the seeming ability to recognize the man a year later and

your inability to recognize his photograph four days after the event?

"A   I recognized him when I saw him, not from the pictures.

"Q   But you do recognize the picture now as being a picture of him?

"A   Yes, I do.

"Q   Do you have any explanation for your inability to recognize his picture four days after the event?

"A   Well, I didn't recognize him from the pictures. It's just from what I saw him.

"Q   We understand that, but do you have any reason why you aren't able to recognize it four days after the event?

"A   No, I don't.

"Q   Would the explanation be that all you are recognizing in court is this picture that you saw four days after the event?

"A   Yes."

On cross-examination the witness reiterated that his identification was based on his recollection of the night of the crime, though on redirect he again answered in the affirmative the same question quoted last in the above examination. Counsel's questions may have confused the witness. In any event the jury must decide the witness's credibility.

■ ■ The final assignment of error is directed at the trial court's admonition to Miller that he would be held in contempt if he refused to answer the state's questions about the robbery. Miller at the time had already been convicted for his part in the holdup-murder. The testimony he gave recounted the events of the night of the crime, implicating Denniston as the one who shot and killed the storekeeper.

■ ORS 139.310, upon which defendant relies, provides in pertinent part:

"In the trial of * * * any indictment * * * against a person * * * charged with the commission of a crime, the person so charged * * * shall, *at his own request, but not otherwise,* be deemed a competent witness, the credit to be given to his testimony being left solely to the jury * * *." (Emphasis supplied.)

Defendant argues that, as a co-indictee, Miller could not be compelled to testify, and his testimony under compulsion was, thus, incompetent. *State v. Broadhurst,* 184 Or 178, 213, 196 P2d 407 (1948), *cert denied* 337 US 906, 69 S Ct 1046, 93 L Ed 1718 (1949), is cited as authority.[④] Whether Oregon still remains in the singular minority position noted in *Broadhurst* as to the incompetency of a co-indictee to testify at the separate trial of the other co-indictee is open to question. See *Anderson v. Gladden,* infra, at 828. Nevertheless, it has long been settled in Oregon, as elsewhere, that the rule of incompetency does not operate when the testifying co-indictee already has been acquitted, convicted or pled guilty to the crime about which he is asked to testify. *Anderson v. Gladden,* 205 Or 538, 288 P2d 823 (1955), *cert denied* 350 US 974, 76 S Ct 451, 100 L Ed 845 (1956); *State v. White,* 48 Or 416, 428, 87 P 137 (1906); *State of Oregon v. Drake,* 11 Or 396,

---

[④] The evolution of statutes such as ORS 139.310 which abrogated the common law rule that an accused person was incompetent to testify at his own trial is detailed in 2 Wigmore, Evidence 706, § 580 (3d ed 1940), and generally explained in State v. Broadhurst, supra. As to the status of a co-indictee under modern statutes, Wigmore concludes:

"There ought to-day to be no further question in any jurisdiction (except Georgia) that there is no limitation whatever on the qualification of a co-indictee or co-defendant to testify for or against the accused." 2 Wigmore, supra, at 714.

402, 4 P 1204 (1884); 2 Wigmore, Evidence 706, § 580 (3d ed 1940). Defendant's citation to authorities holding that a charge still "pends" against a person even after conviction, for example, during a petition for a new trial or an appeal, more properly relates to another aspect of Miller's testimony under court compulsion, i.e., his Fifth Amendment privilege not to be compelled to incriminate himself. At the time Miller testified, if his appeal was pending or the allowable time for taking an appeal had not expired, the compulsion of his testimony might raise a substantial question. However, the record does not necessarily indicate that such was the case. *Compare*: the cases collected in Annotation, 9 ALR 3d 990, 1001-1004 (1966). We need not reach that question here in any event since the privilege against self-incrimination is personal to the witness and any error concerning that privilege may only be raised by him. *McAlister v. Henkel,* 201 US 90, 26 S Ct 385, 50 L Ed 671 (1906); *State v. Johnson,* 243 Or 532, 413 P2d 383 (1966); 8 Wigmore, Evidence 413, § 2270 (McNaughton rev 1961); 58 Am Jur 52, Witnesses § 48; see ORS 44.070.

Affirmed.