DEHOOG, P. J.
*249 Defendant appeals a judgment of conviction entered following a bench trial in which the trial court found him guilty of fourth-degree assault constituting domestic violence. Defendant assigns error to the court's pretrial ruling that a recorded 9-1-1 call would be admitted at trial.[1] We conclude that, even though there was evidence in the record to support the finding that the recorded 9-1-1 call was the 9-1-1 call placed by the complainant, the record does not support the finding that the recording itself was an accurate recording of the call. As a result, the evidence was insufficient to establish the authenticity of the recording under OEC 901, and the trial court erred in admitting it. Furthermore, because the 9-1-1 call was qualitatively different from the state's other evidence, the error in admitting that evidence was not harmless. We therefore reverse and remand.
At trial, the court received the following evidence, most of which came in through testimony at a pretrial hearing regarding the complainant's unavailability to testify and through her medical records. Officer Matsukado of the Beaverton Police Department testified that he had responded to an incident involving the complainant and defendant on November 9, 2014. During his investigation, Matsukado confirmed that the complainant's address was the same as the address to which dispatch had sent him in response to a 9-1-1 call. According to Matsukado's log, he responded to the incident at approximately 4:00 p.m. When he arrived, paramedics were present and administering aid to the complainant; Matsukado subsequently followed them to the hospital to conduct an interview. In addition to interviewing the complainant, Matsukado took photographs of her abdomen.
At the pretrial hearing, the state played the disputed 9-1-1 recording. A voice on the recording states the date and time as November 9, 2014, at 15:53:56. A caller *250 tells the 9-1-1 operator that her fiancé has hit her hard in the stomach. The caller also gives her address, which other evidence at trial showed to be the address of the complainant in this case. The caller repeatedly says that, when she returned home from school, her fiancé hit her in the stomach. She also reports having *744 difficulty breathing. The caller identifies her attacker as her fiancé, provides his name, describes his appearance, and tells the operator his nationality and date of birth. Evidence later introduced at trial substantiated that defendant was the individual whom the caller had identified as her assailant. Finally, the name that the caller gave as her own was the name of the complainant in this case. The operator ended the call upon hearing emergency personnel arrive. According to a "certificate of authenticity" that accompanied the recording, the call ended at 15:59:21.[2]
After the state played the 9-1-1 recording for the trial court, defense counsel objected to its admission at trial, arguing that the state had failed to lay an adequate foundation to authenticate the recording. Acknowledging that the state had provided the certificate of authenticity, defendant argued that the certificate was insufficient to satisfy OEC 901 without testimony from at least one of the two participants in the call. In response, the state argued that the recording was a business record bearing a certificate of authenticity, and noted that, in the past, the state had routinely introduced 9-1-1 recordings without any further foundation. The certificate of authenticity on which the state relied purported to be prepared by the Washington County Consolidated Communications Agency (WCCCA) and stated that the "attached MP3 File" is "a true and accurate copy of the original." The trial court admitted the recording, stating, "All right. Thank you. I'm going to overrule that particular objection."
The trial court ultimately found the complainant unavailable for trial. The court explained that the 9-1-1 recording would be admitted as an excited utterance under OEC 803(2) (hearsay exception for excited utterances), and that redacted medical records from the complainant's *251 emergency room visit would be admitted under OEC 803(4) (exception for certain statements made for purposes of obtaining medical care). In those records, several treatment providers documented the complainant's report of how her injury had occurred. For example, the complainant's chart notes indicate that she reported that her boyfriend had struck her several times in the abdomen. They also state that the complainant described defendant as having hit her so hard that she fainted and stopped breathing. Medical notes from approximately 5:00 p.m. indicate that the complainant told medical staff that the abdominal pain she was experiencing had worn off. Due to the complainant's report, the hospital ordered a CT scan of her abdomen, which "did not show anything worrisome."
The trial court proceeded with a bench trial. The parties agreed that the court would consider the 9-1-1 call and medical report evidence that the state had presented, and defendant stipulated that he and the complainant were living together in the same apartment on the date of the incident and had, at some point, been in an intimate relationship. The court dismissed other charges after the state acknowledged that it could not proceed on them, and it found defendant guilty of assault in the fourth degree constituting domestic violence.
On appeal, defendant assigns error to the trial court's ruling admitting the recording of the 9-1-1 call. Defendant argues that the court erred in admitting the recording because the state failed to lay an adequate foundation to establish the recording's authenticity under OEC 901. In response, the state argues that the certificate of authenticity was sufficient to satisfy OEC 901, and that, if it was not, the surrounding circumstances and the content of the recording itself were sufficient to authenticate the call.
Where a trial court has ruled that certain evidence does or does not have an adequate foundation, we review the foundational evidence for legal sufficiency. State v. Divito , 180 Or. App. 156, 164, 42 P.3d 918, rev. den. , 334 Or. 288, 49 P.3d 797 (2002). In other words, we review a trial court's OEC 901 ruling to determine whether there was sufficient evidence for the court to have submitted the issue of authenticity to the *252 finder of fact. State v. Park , 140 Or. App. 507, 511, 916 P.2d 334, rev. den. , 323 Or. 690, 920 P.2d 549 (1996).
OEC 901 provides, in relevant part:
*745 "(1) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
"(2) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of subsection (1) of this section:
"(a) Testimony by a witness with knowledge that a matter is what it is claimed to be.
"*****
"(d) Appearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances.
"(e) Identification of a voice, whether heard first-hand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
"(f) Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business ***:
"*****
"(g) Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."
OEC 901 sets forth the "well-accepted requirement that whenever a piece of evidence is offered there must be certain minimum assurances that the evidence is what it purports to be, what it is offered as being[,] and what its value depends on." Legislative Commentary to OEC 901, reprinted in Laird C. Kirkpatrick, Oregon Evidence § 901.02, at 947 (6th ed. 2013).
*253 When establishing the authenticity of a recording, such as the recorded 9-1-1 call at issue here, the proponent must offer sufficient evidence to support the finding that the recording is accurate. See State v. Reyes , 209 Or. 595, 636, 308 P.2d 182 (1957) (stating that, when the accuracy of a recording device and the identity of a person speaking are fully established, the recording is "as much entitled to be received in evidence as a photograph of an object, a person[,] or a place"); State v. Miller , 6 Or. App. 366, 370, 487 P.2d 1387 (1971) ("It has long been established that a photograph is entitled to be received in evidence when a witness testifies that the photograph accurately depicts the object. We see no reason why the same rule should not be applied [to audio recordings]." (Emphasis added.) ); see also Kruse v. Coos Head Timber Co. , 248 Or. 294, 300, 432 P.2d 1009 (1967) (holding that a tape of a conversation was not admissible because there was no proof that the tape accurately recorded the conversation). Establishing that a recording is accurate is part and parcel of establishing that the evidence is what it purports to be. Therefore, in a case involving a recording, for the proponent of the evidence to establish the authenticity of the recording under OEC 901, it must provide sufficient evidence both that the original evidence is what it purports to be and that the recording of that evidence accurately reflects the original.
Historically, a party seeking to establish the authenticity of an audio recording was required to make a litany of showings, including that the recording device was capable of taking testimony; that the operator of the device was competent; that no changes, additions, or deletions were made; and that the recording was preserved. Miller , 6 Or. App. at 369-70, 487 P.2d 1387 ; see also United States v. McKeever , 169 F.Supp. 426, 430 (SD NY 1958), rev'd on other grounds , 271 F.2d 669 (2d Cir. 1959) (listing the same requirements). Although the traditional foundation also included the requirement that the proponent establish the "authenticity and correctness of the recording," Miller , 6 Or. App. at 370, 487 P.2d 1387, Kirkpatrick has explained that a party fulfills that requirement by fulfilling the others. Kirkpatrick, Oregon Evidence § 901.04[2][d] at 955.
More recently, many courts have moved away from a strict adherence to those requirements and approved a *254 more flexible approach. See, e.g. , *746 Miller , 6 Or. App. at 370-71, 487 P.2d 1387 (concluding that testimony of detective who recorded the defendant's statements that recordings were "accurate" satisfied five of the seven traditional factors); United States v. Stephens , 202 F.Supp.2d 1361, 1367 (ND Ga 2002) (noting traditional requirements but clarifying that they are not a "rigid formula for admission" in the Eleventh Circuit); United States v. Green , 175 F.3d 822, 830 n. 3 (10th Cir. 1999) (recognizing that the McKeever factors may assist judges in ruling on foundation questions, but that they are not prerequisites for the admission of sound recordings). Ultimately, however, we need not decide the exact contours of the requirement under OEC 901 in this case. That is because, as we explain below, none of the traditional indicia of accuracy were present here, and the state has not shown that other evidence supported a finding that the recording was accurate.
Applying OEC 901 here, the state was required to produce evidence of two things. First, it was required to show that the recorded 9-1-1 call was, as a general matter, what it purported to be-the 9-1-1 call placed by the complainant. Second, it was required to show that the recording accurately represented that call. Thus, even assuming that the content and surrounding circumstances were sufficient to authenticate the state's evidence as the call placed by the complainant, see OEC 901(2)(d), the state still was required to offer evidence to support the finding that the recording itself was accurate. To the extent that the state addresses that specific aspect of authenticity, it raises three arguments: that the certificate of authenticity is sufficient, that the content and surrounding circumstances of the call authenticated the recording of the 9-1-1 call, and that the recording is a public record. None of those arguments is persuasive.
First, the state's reliance on the certificate of authenticity to establish that the recording was an accurate copy of the 9-1-1 call fails because the certificate does not purport to establish that. The certificate provides that the "attached MP3 File" is "a true and accurate copy of the original." At most, that certification indicates that the MP3 file provided by WCCCA is a true and accurate copy of the original recording held by WCCCA. That does not, however, *255 address the accuracy of the underlying recording of the 9-1-1 call. Stated differently, the certificate of authenticity may support the finding that the MP3 file is an accurate copy of the recording, but it does not support an inference that the recording itself is an accurate rendition of the 9-1-1 call that took place. As a result, the certificate of authenticity did not provide a sufficient basis for the trial court to submit the issue of authenticity to the finder of fact.
Second, citing OEC 901(2)(d), the state argues that the content of the 9-1-1 call and the surrounding circumstances were sufficient to show both that the recording admitted into evidence was the call placed by the complainant and that the recording accurately depicted that call. The state did not advance that argument to the trial court, and the court gave no indication that it was basing its ruling on OEC 901(2)(d). Thus, we understand the state to be arguing that the trial court was "right for the wrong reason." See Outdoor Media Dimensions Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001). The state makes no effort, however, to demonstrate that its proposed alternative basis for affirmance is one that we should consider on appeal. See id . (setting forth the requirements for consideration of alternative basis of affirmance). Given our limited case law construing OEC 901(2)(d) and the lack of developed argument as to why we should exercise our discretion to consider the state's alternative theory, we decline to do so. See State v. Warren , 291 Or. App. 496, 512, 422 P.3d 282 (2018) (declining to address alternative basis for admissibility of evidence under similar circumstances); State v. Jones , 285 Or. App. 680, 690-91, 398 P.3d 376 (2017) (same); State v. Kolb , 251 Or. App. 303, 312, 283 P.3d 423 (2012) ("Even assuming that the development of the factual record before the trial court would not have been materially affected if the contention had been raised initially, * * * the fact remains that to address that contention meaningfully would require us, in the first instance-without legal record development or any real assistance from the parties-to decide difficult, nuanced, *747 and systemically significant issues. We respectfully decline to do so.").
Third, the state wholly fails to develop its final argument-suggested only in a footnote of the state's brief *256 on appeal-that the recording could be authenticated under OEC 901(2)(g), as a public record found in the place where items of that nature are kept. Because the state has not attempted to develop that argument, we do not address it. Beall Transport Equipment Co. v. Southern Pacific , 186 Or. App. 696, 700 n. 2, 64 P.3d 1193, adh'd to on recons. , 187 Or. App. 472, 68 P.3d 259 (2003) (rejecting an argument written as a "conclusory sentence"; stating that we will not speculate as to what a party's argument might be and that it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself").
In light of the foregoing, we are unpersuaded that the state established a sufficient foundation to authenticate the recorded 9-1-1 call under OEC 901. That is, even assuming that the state provided a sufficient basis for the trial court to determine that the recorded 9-1-1 call was the call that the complainant placed on the day in question, it identifies no evidence from which a rational trier of fact could find that the recording of that 9-1-1 call was accurate . The recording was therefore not properly authenticated and the trial court erred in admitting it.
Having determined that the trial court erred, we must determine whether that error was harmless. Article VII (Amended), section 3, of the Oregon Constitution provides, in part:
"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial ***."
Based on this principle, "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). Defendant argues that the error in admitting the 9-1-1 call was not harmless because it went to the central factual issue of the case-whether defendant had intentionally, knowingly, or recklessly caused the complainant's injuries-and was qualitatively different from the corresponding facts in the complainant's medical records. We agree *257 with defendant. Although the complainant's medical records reflected many of the same allegations as the recorded call, evidence of the complainant's emotionally laden statements in her own voice made shortly after the alleged assault is qualitatively different from a medical professional's written summary of those statements made sometime later. See, e.g. , Davis , 336 Or. at 34, 77 P.3d 1111 (concluding that excluded statements were not merely cumulative because they were qualitatively different from the other evidence). As a result, we cannot conclude that there is little likelihood that the error affected the verdict, and the error was therefore not harmless.
Conviction for fourth-degree assault constituting domestic violence reversed and remanded; otherwise affirmed.

Defendant also assigns error to the trial court's imposition of court-appointed attorney fees, and the state concedes that the imposition of fees was error because there was no evidence in the record that defendant was or will be able to pay. Because we reverse, we do not address that assignment.

The nature of the "certificate of authenticity" is described below.