Submitted October 15, 2019, affirmed May 13, petition for review denied October 1, 2020 (367 Or 115)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EARL SPENCER,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR84441, 17CR08972;
A167273 (Control), A167274

467 P3d 73

Defendant appeals a judgment of conviction for second degree theft, ORS 164.045, and a judgment revoking his probation as a result of that conviction in a separate case. He argues that the trial court erred by admitting surveillance footage of the theft without requiring the state to satisfy the traditional seven-part test for authenticating recording evidence. *Held*: The trial court did not err in admitting the surveillance footage. Under *State v. Sassarini*, 300 Or App 106, 452 P3d 457 (2019), the state was not required to satisfy each of the seven traditional requirements to authenticate a recording. Instead, those requirements serve as factors to aid in assessing whether a proponent has made out a *prima facie* case of authenticity. Here, although the state did not present evidence on every factor, the state still presented sufficient evidence to establish a *prima facie* case that the surveillance video was authentic.

Affirmed.

Jerry B. Hodson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for theft in the second degree, ORS 164.045, and a judgment revoking his probation as a result of that conviction in a separate case. He assigns error to the trial court's rulings admitting security camera footage that depicted him stealing car batteries from a freight hauling facility. Defendant argues that the state did not present sufficient evidence to authenticate the video recording in accordance with OEC 901(1). Because we conclude that the state presented sufficient evidence to satisfy the requirements of OEC 901(1), we affirm both judgments.

We review a trial court's OEC 901 ruling to determine whether there was sufficient evidence to support sending the issue of authenticity to the finder of fact. *State v. Park*, 140 Or App 507, 511, 916 P2d 334, *rev den*, 323 Or 690 (1996). Thus, we summarize the testimony and other evidence presented to the trial court to establish the security footage's authenticity.

Defendant was charged with one count of second-degree theft for his role in stealing several car batteries from trucks parked outside a facility operated by Soniq Transportation, a freight hauling company operating in Portland. Before trial, defendant moved to exclude security camera footage that depicted him and another man taking batteries from the trucks and loading them into a van. Defendant argued that the state was unable to authenticate the security footage as required by OEC 901(1) because it had been edited to include only the relevant portions, and the state did not offer a witness who had personally observed the events to verify the video's accuracy. Without such a witness, defendant argued that the state must satisfy the traditional requirements for authenticating a recording, and it failed to do so. *See State v. Miller*, 6 Or App 366, 369-70, 487 P2d 1387 (1971) (applying "strict foundation requirements" in the form of a seven-part test to admit an audio recording).

The trial court denied defendant's motion, reasoning that the state would be able to lay a sufficient foundation at trial and the issues defendant raised went more to the weight of the evidence than its admissibility. At trial,

defendant again objected to the introduction of the footage, but the trial court overruled his objection. The jury found defendant guilty, and, in a separate case, the court revoked his probation.

On appeal, defendant challenges his conviction and probation revocation. He renews his argument that the state must satisfy each of the traditional requirements to authenticate the security camera recording. In response, the state contends that OEC 901 superseded those requirements in favor of a more flexible approach.

Our recent decision in *State v. Sassarini*, 300 Or App 106, 452 P3d 457 (2019), resolves that debate. In evaluating whether a proponent has offered sufficient evidence to authenticate a video, the legislature intended for courts to consider the traditional requirements for authenticating a recording, but not to require proponents to rigidly satisfy each one. *Id.* at 126 (citing *Miller*, 6 Or App at 369-70). Rather, the factors serve as "apt considerations" in assessing whether a proponent has made out a *prima facie* case of authenticity. *Id. Sassarini* clarified that the approach to establishing authenticity under OEC 901 is flexible. *Id.* The requirements depend on the circumstances presented in any given case and the nature of the evidence that is offered. *Id.*

Against that backdrop, we conclude that the state presented sufficient evidence to support a finding that the security footage was authentic. The factors to consider in assessing the authenticity of a recording include that (1) the recording device was capable of taking testimony; (2) the operator of the device was competent; (3) the recording is accurate; (4) the recording has not been materially changed, added to, or deleted from; (5) the recording was adequately preserved; (6) the actors or speakers can be identified; and (7) the testimony elicited was voluntarily made without any kind of inducement. *Miller*, 6 Or App at 369-70. Crediting the testimony of the state's witnesses, the jury could have found that the state satisfied most of those factors.[1]

---

[1] Because the camera did not record any audio, we need not address factor (7)—whether the state offered evidence that the statements on the recording were made voluntarily and without inducement.

First, the state submitted evidence sufficient to show that Soniq's camera was capable of producing a reliable recording. Soniq's operations manager, Westberry, testified that the camera was working on the day of the theft and recorded the footage at issue in response to the men activating its motion sensor.

Westberry's testimony also satisfied the second factor by providing evidence from which the jury could infer that the operator of the device was competent. Although Soniq's camera did not have a human "operator" in the traditional sense, the camera's automated, motion-activated system played an analogous role. Westberry's testimony that the camera was working and recorded security footage in response to motion, as it was designed to, supported an inference that the automated system was functioning properly and operating the camera competently.

The state's next witness, Portland Police Officer Feist, provided evidence to support the third factor, that the recording was accurate. Feist testified that, when viewing the security footage, he was able to identify the license plate on the van that the men were loading the car batteries into. Using that information, he located a van bearing that license plate at a nearby motel. He noted that, in addition to the license plate, the van had the same body type as the van in the security footage. A search of the vehicle revealed a number of car batteries, at least one of which was later identified as one stolen from Soniq. The fact that Feist later found one of Soniq's batteries in the same van seen in the security footage suggests that the footage accurately depicted that portion of the theft.

The state also offered sufficient evidence to support the fourth factor, that there had been no material additions, changes, or deletions to the footage. Before playing the edited security footage for the jury, the state asked Westberry whether he had previously viewed that footage. Westberry responded that he had watched the edited version the day before and that it was a "fair and accurate" representation of the original footage from the day of the theft. Crediting that testimony, the jury could have concluded that, although forensic technicians had edited the footage, those edits did

not materially alter the footage's content. *See Sassarini*, 300 Or App at 112, 127 (witness's testimony that the recording played in court matched the original recorded with his camera was sufficient for the jury to conclude that he had not altered the video before trial).

There was also sufficient evidence to meet the sixth factor—the identification of the actors in the recording. Feist testified that defendant admitted that he was one of the two men in the security footage, a fact defendant stipulated to at trial. Defendant's admission that he was one of the men in the footage would have afforded the jury an ample basis to at least identify him as one of the individuals depicted.

Admittedly, the state presented little evidence to support the fifth factor, a demonstration that the recording was adequately preserved. The evidence showed only that the camera recorded the footage to a hard drive which was then transferred to DVD. As previously noted, however, OEC 901(1) takes a flexible approach to authentication. Even though the state presented scant evidence regarding preservation, it satisfied each of the other factors in the analysis. That, coupled with the absence of any evidence or other reason to question whether the security footage was adequately preserved, persuades us that the state carried its burden under OEC 901(1). Accordingly, we conclude that the trial court did not err in admitting the security footage, and we affirm both judgments.

Affirmed.