Argued and submitted November 24, 1986, reversed and remanded for new trial
September 16, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN LEE COX,
*Appellant.*

## (85-585 and 85-586; CA A37970)

742 P2d 694

John Henry Hingson III, Oregon City, argued the cause and filed the brief for appellant.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jens Schmidt, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals two convictions for rape in the first degree. He was indicted for two rapes in the first degree, ORS 163.375, and for attempted rape in the first degree. ORS 161.405 and ORS 163.375.[1] Before trial, he moved to suppress evidence of a statement that he had made on August 28, 1985, after he was indicted, to Beck, a marriage counselor and Mormon clergyman. In that statement, defendant admitted that he had had sexual intercourse with the victim, his stepdaughter, once after he had joined the Mormon Church. The court denied the motion. At trial, defendant moved separately to strike Beck's testimony and for a mistrial. The court denied the motions. Defendant assigns the three rulings as errors. He asserts that they violated the clergy-penitent privilege under OEC 506. We agree and reverse.

The parties discuss the merits of the three assignments together, and we will do that too. In addition to the evidence received at trial, the court held two pretrial hearings in which it received evidence pertinent to the privilege issue. Both parties refer to the evidence obtained at both pretrial hearings and at trial in support of their respective positions on the assignments of error.[2]

OEC 506(2) provides:

"A member of the clergy shall not, without the consent of the person making the communication, be examined as to any confidential communication made to the member of the clergy in the member's professional character."

OEC 506(1) provides:

"As used in this section, unless the context requires otherwise:

"(a) 'Confidential communication' means a communication made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.

"(b) 'Member of the clergy' means a minister of any

---

[1] The jury could not reach a verdict on the charge of attempted rape in the first degree, and the court declared a mistrial on that charge.

[2] At the second pretrial hearing, defendant renewed his motion to suppress, which the court also denied.

church, religious denomination or organization or accredited Christian Science practitioner who in the course of the discipline or practice of that church, denomination or organization is authorized or accustomed to hearing confidential communications and, under the discipline or tenets of that church, denomination or organization, has a duty to keep such communications secret."

Defendant's statement to Beck was a "confidential communication." Under OEC 506(1), the speaker must make the communication privately and intend that it not be disclosed, except to other persons present in furtherance of the purpose of the communication. *See State v. Miller,* 300 Or 203, 709 P2d 225 (1985), *cert den* ___ US ___ (1986). Although defendant visited Beck for marriage counseling approximately 14 times over a one year period preceding August 18, 1985, and other persons were present at some of those sessions, only defendant and Beck were present at the last session on August 28, 1985. The communication was private.

The state contends that defendant did not intend that Beck not disclose the confession. Beck testified at a pretrial hearing:

"We discussed somewhat my situation, that I would be coming here. And I told him that I felt assured that I would refuse to testify. Among other things he told me that he didn't want me to be in contempt of court and that if it came to that, that he did not want me to withhold any testimony."

Beck, however, also testified:

"In fact, I assured him, I said, 'You have strict confidentiality with me. I'll not share it with your wife or your bishop or anybody else.' "

The speaker's intent that a communication be kept confidential can be inferred from the circumstances surrounding the communication. *State v. Miller, supra,* 300 Or at 210. Here, defendant intended that Beck keep the conversation confidential. His remark that Beck could testify to his statement if Beck would be in contempt of court if he refused does not mean that defendant intended that, within the meaning of OEC 506(1), Beck was free to disclose the communication. Indeed, we think it means just the opposite.

It is undisputed that Beck was a member of a religious denomination. He was also a "stake president," with

the responsibility for supervising three congregations or "wards." He testified at a pretrial hearing that stake presidents are accustomed to hearing "confessions":

"On the local level there are four individuals who I guess you say serve as confessors in that comparison to the Catholic Church. And that is the bishop and the three members of the stake presidency. I'm one of those members."

He also testified that, as a Mormon minister, he had a duty under the discipline of the church not to disclose confidential communications made to him. Under the circumstances, we conclude that Beck was a "member of the clergy," within the meaning of OEC 506(1)(b).

Beck did not know in which hour of the two-hour session of August 28, 1985, defendant made the confession. He was certain, however, that it occurred after he had told defendant that he wanted to talk to him as a "church leader" or "church person" or "clergy type member" and after they "started talking about church membership." He testified:

"We talked about [the other children] and the family. And then we shifted into the other area. And it was in the second area."

Beck explained why defendant confessed to him:

"I told him I wanted to talk to him about his membership in the church. And I pointed out to him that incest in the church was automatically excommunication."

Beck also testified:

"Q. You indicated that the previous time when you had asked him if, in fact, he was sexually involved with this girl was in October of 1984. And at that time he told you no?

"A. Yes.

"Q. All right.

"A. I asked him why he told me no. He said well, even though I knew that you were counselor, I also knew that you were leader of the church. And he said, 'The church meant so much that I didn't want, only having been a member a few weeks or months, to get kicked out. That is why I lied to you.'

"Q. * * * [W]as this the first time ever that he admitted to you that the allegations were, in fact, true?

"A. That's correct, that is the first time."

The clergy-penitent privilege belongs to the penitent. *See State v. Miller, supra,* 300 Or at 214. At the time that defendant confessed to Beck, he could reasonably have regarded Beck as acting in his "professional character" as a member of the clergy, and not merely as a marriage counselor. OEC 506(2); *see State v. Miller, supra,* 300 Or at 214. The key points are that, at the time when defendant confessed, he knew that Beck was a clergyman and regarded him, and reasonably could regard him, as acting in his professional character; he intended his communication to Beck to be confidential; and he knew that Beck had expressed a willingness to hear the communication in confidence and in his professional character as a member of the clergy.[3] The court's errors necessitate a new trial.

■    We discuss other assignments of error of defendant which may arise on retrial. The son also had sexual intercourse with the victim several times between October, 1984, and February, 1985. He was subject to prosecution for contributing to the sexual delinquency of a minor, ORS 163.435, and sexual misconduct. ORS 163.445. The court granted him transactional immunity. *See* ORS 136.617; ORS 136.619. He testified at trial that he had witnessed acts of sexual intercourse by defendant and the victim and that defendant had also admitted to him that he had had sexual intercourse with the victim. Defendant offered to prove on cross-examination that the court had granted immunity. The court sustained the prosecutor's objection. Although the state had not yet filed criminal charges against the son, the jury was entitled to know his possible bias or interest in order to evaluate his credibility. OEC 609-1(1); *see State v. Sheeler,* 15 Or App 96, 100, 514 P2d 1370 (1973); *see also State v. Hubbard,* 297 Or 789, 799-800, 688 P2d 1311 (1984). The court erred.

■    Defendant's other assignments lack merit. He argues that the trial court should not have consolidated the three indictments for trial. He did not object to consolidation until the second day of pretrial hearings. The prosecutor and the court each indicated a belief that the other was responsible for

---

[3] The court's finding that, at the time defendant confessed, Beck was acting as a marriage counselor and not in his professional capacity as a member of the clergy is not supported by the record. The state of mind of the penitent, not the clergyman, is determinative.

consolidation. The prosecutor then moved to consolidate. The trial court stated:

> "The court rules that we adopted February 1st do not specify on these multiple indictments. I know what our practice is and I know what the parties have assumed, that all three case were to be tried. We are ready to bring a jury up and I'm not going to order three separate trials in this case. The idea of putting all these people, putting the defendant, and the time and expense of three trials is ridiculous. Everybody assumed that it would be disposed of in one trial. As I say, all the motions, all the requests for discovery and everything else was all — even right up to today, the requested instructions, [defendant's attorney], have all the three titles, the numbers of the cases on them."

Later, defense counsel and the court had this exchange:

> "The Court: You knew up to five minutes ago or whenever it was that these cases were being tried together.
>
> "Counsel: I'm going to confide in you. I knew long ago that she hadn't filed a motion to consolidate. I thought my duty as a good defense lawyer was to keep my mouth shut.
>
> "The Court. If you had that in mind---
>
> "Counsel: I have known it for a long time. Thank you, Your Honor."

Consolidation was appropriate, *see* ORS 132.560, and defendant never moved to sever. *See State v. Linnemeyer,* 86 Or App 22, 738 P2d 586 (1987).

■     In addition to the son's testimony, the court admitted evidence of other acts of sexual misconduct between defendant and the victim. The state offered the evidence to explain the victim's apparent acquiescence in the acts for which defendant was indicted. The court did not err. *See State v. Johns,* 301 Or 535, 548, 725 P2d 312 (1986), construing OEC 404(3); *see also State v. Kristich,* 226 Or 240, 359 P2d 1106 (1961).

■     The court denied defendant's motion for disclosure of the clerk's notes of the victim's grand jury testimony. *State v. Hartfield,* 290 Or 583, 624 P2d 588 (1981), held that the defendant was entitled to disclosure of tape recordings of grand jury testimony. We have refused to extend *Hartfield* to handwritten notes of grand jury testimony. *State v. Goldsby,* 59 Or App 66, 650 P2d 952 (1982). Defendant also asked for disclosure of

any "other" inconsistent statements of the victim in the state's possession or which it could obtain with reasonable diligence, but he only argues "the possibility" that such inconsistent statements exist.

The court did not err when it refused to order the victim to submit to an examination by a mental health professional of defendant's choosing. *State v. Hiatt,* 303 Or 60, 733 P2d 1373 (1987).

Defendant argues that the court should have suppressed evidence of defendant's statements to a police detective as involuntary, because the state did not produce a tape recording of them at trial. The state was not required to do so.

The court refused to give several jury instructions "on voluntariness" that defendant requested.[4] and gave an instruction on voluntariness to which defendant excepted.[5] The instructions that the court gave adequately and correctly explained the state's burden of proof. *See State v. Burdick,* 57 Or App 601, 646 P2d 91 (1982); *see also State v. Miller, supra.*

---

[4] Defendant requested these instructions:

"In determining whether the alleged statements of the accused were voluntary, the State must prove voluntariness by the clear weight of the evidence.

"In determining whether the alleged statements of the accused were voluntary, the same standard of proof applies as with all other issues in this case, that is, the State's burden to prove the confession was voluntary beyond a reasonable doubt.

"You must decide whether the alleged statements were voluntarily made without regard to the truth or falsity of the alleged statements. Statements made that are induced by the influence of hope or fear are involuntary as a matter of law and may not be considered by you. The precise form of words in which the inducement is presented to the defendant's mind is immaterial. It is sufficient if they convey to him the idea of temporal benefit or disadvantage, and his statements followed in consequence of the hopes thereby excited."

[5] The judge gave this instruction:

"The burden of proof is upon the state to prove the statements were voluntarily made.

"* * * * *

"There are several circumstances you may consider to conclude whether or not the statements were voluntary. If a statement is procured by a promise, express or implied, then this could be evidence of involuntariness. Any evidence that suggests the statements were induced by fear or hope may be considered by you on the question of voluntariness. You may consider whether or not any inducement logically suggests to a person the idea of a temporal benefit or disadvantage and the statement follows in consequence of the hopes thereby excited."

Reversed and remanded for a new trial.