Argued and submitted March 19, affirmed in part; vacated in part; remanded for resentencing May 15, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# ERIC LEHMON HILTON,
*Appellant.*

000735951; A115033

69 P3d 779

David J. Celuch argued the cause for appellant. With him on the brief was Celuch, Ludwig & Forman, PC.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

A jury convicted defendant of the crimes of felon in possession of a firearm, ORS 166.270, and unlawful use of a weapon, ORS 166.220.[1] The trial court sentenced him to consecutive prison terms of five years and ten years, respectively, applying the firearm minimum sentence statute, ORS 161.610(4), for the latter offense. On appeal, defendant advances several assignments of error. He argues that the trial court should have dismissed the action based on statutory and constitutional speedy trial violations. He further assigns error to the court's denial of his motion for a mistrial after the state elicited testimony that he had threatened a witness. In addition, he asserts that the court erred by imposing a 10-year sentence for the unlawful use of a weapon conviction. Finally, defendant argues that the court erred in imposing consecutive sentences. We vacate the sentence for unlawful use of a weapon conviction, remand for resentencing, and otherwise affirm.

Because defendant was convicted, we state the facts in the light most favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). On October 29, 1998, defendant's girlfriend, Zollner, drove him past an apartment building from which he had recently been evicted. When they reached a particular driveway, defendant rolled down the window of the car and fired at least seven shots at the side of the building. One shot nearly struck Summerer, the apartment manager, in the head. Zollner and defendant then drove away. At the time, defendant was on probation for an unrelated offense.

On May 27, 1999, Zollner spoke with Collard, defendant's probation officer, and told him about the shooting. As a result, a probation violation warrant was issued for defendant's arrest. He was arrested on June 4 and released 17 days later pending a hearing. The probation violation proceeding was dismissed on July 14, 1999. On July 27, 2000,

---

[1] In addition to those convictions, defendant pleaded no contest to and was convicted of one count of first-degree rape, ORS 163.375, and one count of third-degree rape, ORS 163.355. Defendant does not challenge those convictions or the sentences imposed for them.

defendant was indicted for unlawful use of a weapon and felon in possession of a firearm in connection with the October 1998 incident. He was taken into custody on the same day. On September 5, 2000, the indictment was dismissed and, on the same day, defendant was reindicted on the same charges. On September 11, defendant waived in writing his right under ORS 136.290 to have the case brought to trial within 60 days of his arrest. After defendant requested and received several continuances, trial was set for December 18, 2000.

On December 15, 2000, defendant filed a motion to dismiss the action on the ground of prosecutorial delay in violation of ORS 135.747, Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. He argued that the state was aware of the allegations against him in May 1999, when it issued the probation violation warrant, but that it had failed to indict him for more than a year after that. He also asserted that delays between the July 27 indictment and the September 5 reindictment were all attributable to the state. The court denied the motion, and the case went to trial.

During the state's case-in-chief, the prosecutor called Zollner as a witness. During direct examination, the following colloquy took place:

"Q Okay. I want to talk to you a minute about after this incident happened.

"A Okay.

"Q Did you go to the police and tell them about it?

"A No.

"Q And why not?

"A Because he told me that if I said anything to anybody, he would know that it was me because I was the only one there, and that he would shoot me like he did the apartment; and he also told me that the whole reason he did that is because it was a test to see if he could even trust me.

"Q Okay. Did he make any threats towards anyone else that you know of?

"A Uh-huh.

"Q Who else did he threaten?

"A Well, he threatened me that he was going to hide in a bush and shoot my mom when she was gonna leave her house and go to work in the morning.

"[DEFENSE COUNSEL]: Judge, can we approach?

"THE COURT: Yup."

The bench conference took place off the record. After the conference, the prosecutor resumed examining Zollner on other subjects. After defendant's counsel cross-examined her, the court excused her from the stand. The court and counsel then conferred off the record about a scheduling matter, and the court excused the jury for a short recess. While the jury was out of the courtroom, the court and counsel discussed the propriety of the state's calling Zollner's attorney as its next witness. When that issue was resolved, the court invited further discussion of defendant's objection to Zollner's testimony about threats. After a colloquy lasting several minutes, defendant moved for a mistrial on the ground that Zollner's testimony was unfairly prejudicial. The court denied the motion, but it offered to give a limiting instruction directing the jury to consider Zollner's statement that she was threatened but not the content of the threats. Defendant argued that, rather than curing the prejudice, the instruction would call further attention to the statement. Nevertheless, over defendant's objection, the court gave the instruction.

The jury returned guilty verdicts on both charges. It further found that defendant had seriously endangered the life and safety of Summerer. The court sentenced defendant to five years' imprisonment on the felon in possession of a firearm conviction.[2] Based on defendant's stipulation that he had, in 1983, been convicted in Virginia of a felony involving the use of a firearm, the court sentenced him under ORS 161.610(4)(b) to 10 years' imprisonment for unlawful use of a weapon.[3] Because the court found that the risk to Summerer

---

[2] The court sentenced defendant according to the Oregon Criminal Justice Commission's sentencing guidelines. The offense was scored 6-A on the guidelines grid, for which the maximum presumptive sentence is 30 months' incarceration. The court imposed a durational departure, OAR 213-008-0003, based on the following aggravating factors: defendant was on probation at the time of the offense; prior incarceration did not deter his illegal conduct; and he was a dangerous offender under ORS 161.725.

[3] ORS 161.610(4) provides:

caused by the shooting was qualitatively different from the harm caused by defendant being a felon in possession of a firearm, it ordered the sentences to run consecutively. *See* ORS 137.123(5)(b).[4] This appeal followed.

In his first assignment of error, defendant renews his argument that the case should have been dismissed for lack of a speedy trial. He argues that the state delayed his prosecution from May 1999 until the second indictment was issued in September 2000. Defendant further contends that the delay prejudiced him by subjecting him to "oppressive pretrial incarceration and anxiety and concern as a result of the pending charges."

Defendant's convictions were both felonies. If he were to prevail on his statutory claim, the state would not be barred from reprosecuting him because dismissal under ORS 135.747 serves as a bar to reprosecution only for Class B and C misdemeanors. ORS 135.753(2). If he were to prevail on constitutional grounds, however, no reprosecution would be possible. *Strunk v. United States*, 412 US 434, 440, 93 S Ct 2260, 37 L Ed 2d 56 (1973); *State v. Ivory*, 278 Or 499, 503, 564 P2d 1039 (1977). Therefore, deciding the statutory claim would not obviate the need to examine the constitutional

"The minimum terms of imprisonment for felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime shall be as follows:

"(a) Except as provided in subsection (5) of this section, upon the first conviction for such felony, five years, except that if the firearm is a machine gun, short-barreled rifle, short-barreled shotgun or is equipped with a firearms silencer, the term of imprisonment shall be 10 years.

"(b) Upon conviction for such felony committed after punishment pursuant to paragraph (a) of this subsection, 10 years, except that if the firearm is a machine gun, short-barreled rifle, short-barreled shotgun or is equipped with a firearms silencer, the term of imprisonment shall be 20 years."

[4] ORS 137.123 provides, in part:

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"* * * * *

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury, or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course or conduct."

claims, which, if successful, would offer more complete relief. Under the circumstances, we depart from our usual practice and examine the constitutional claims first. *State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000). We begin with defendant's claim under the Oregon Constitution.

■■ Article I, section 10, provides that "justice shall be administered * * * without delay." To determine whether the state violated that guarantee, we consider three factors: the length of the delay, the reasons for it, and the extent to which it prejudiced defendant. *Harberts*, 331 Or at 88; *State v. Mende*, 304 Or 18, 23-25, 741 P2d 496 (1987). The first factor can be dispositive. If the delay is not "substantially greater than the average," then the state has not violated the constitutional requirement and our inquiry ends. *Mende*, 304 Or at 23-24. On the other hand, if the delay is so "manifestly excessive," *Harberts*, 331 Or at 88, as to "shock[ ] the imagination and the conscience," *id.* at 86, then we must dismiss the charges without considering the reasons for the delay or prejudice caused by it. If the delay is substantially greater than average but not manifestly excessive, we evaluate each factor, without, however, engaging in a mechanical balancing process. *Ivory*, 278 Or at 505.

■ At the outset, we reject defendant's suggestion that we should consider the time between his probation violation arrest on June 2, 1999, and his initial indictment on July 27, 2000, as "prosecutorial delay." Implicit in that suggestion is the premise that the speedy trial guarantee requires the state to prosecute a suspect as soon as it becomes aware of allegations against him.[5] Defendant is mistaken. As pertinent here, speedy trial rights do not attach until a defendant is formally charged with a crime. *State v. Serrell*, 265 Or 216, 219, 507 P2d 1405 (1973).[6] Here, the probation violation proceedings were distinct from the present criminal action. *Cf.*

---

[5] In *State v. Harris*, 37 Or App 431, 434, 587 P2d 498 (1978), we stated that the Due Process Clause of the Fourteenth Amendment "protects a person from unjust governmental delay in bringing [a] criminal action, while the speedy trial guarantee only protects those accused of a crime * * *." In this case, defendant does not assert a due process claim. We therefore do not consider that issue.

[6] Under the Sixth Amendment, the speedy trial right may attach before a defendant is formally charged if the defendant is taken into custody in anticipation of indictment. In that event, the right attaches upon arrest. *United States v. Loud Hawk*, 474 US 302, 106 S Ct 648, 88 L Ed 2d 640 (1986).

*State v. Kelley*, 119 Or App 496, 497, 850 P2d 1170 (1993) ("[P]rosecution for criminal conduct is not barred, on the ground of former jeopardy, by the prior revocation of the defendant's probation in another case based on the same criminal conduct."). Therefore, the period that elapsed before defendant was indicted is irrelevant to our analysis. *See State v. Harris*, 37 Or App 431, 435-36, 587 P2d 498 (1978) (stating that delay between the defendant's questioning and release and his eventual indictment did not require speedy trial analysis).

■ We turn to the time period between defendant's initial indictment on July 27, 2000, and his trial on December 18, 2000. That period totaled 143 days. The trial court stated, "This is longer than we would like to have to try cases, at least in Multnomah County, but not so much that it shocks my conscience that there's any sort of presumptive prejudice from it." We agree that the delay was not manifestly excessive. *Cf. State v. Harman*, 179 Or App 611, 615, 40 P3d 1079 (2002) (five-year, seven-month delay not "so shockingly long that dismissal [was] required without further inquiry"). However, it was sufficiently long so as to require consideration of other pertinent factors. *See* Oregon Standards for Timely Disposition in Oregon Circuit Courts, Oregon Judicial Conference (Reapproved April 7, 1999) ("[ninety] percent of all felony cases should be adjudicated or otherwise concluded within 120 days from the date of arraignment * * *").

■ We begin by considering the reasons for the delay. Defendant concedes that delays after his reindictment on September 5, 2000, were the result of continuances that he requested. Thus, the state was responsible for only 40 days of the total delay. Defendant does not allege that the state stalled in an attempt to gain advantage at trial or for any other improper purpose. Accordingly, that factor does not weigh in defendant's favor. *See State v. Hadsell*, 129 Or App 171, 177, 878 P2d 444, *rev den*, 320 Or 271 (1994) ("When the relative length of the delay, the reasons for it, and the fact that the delay was not intended to impair defendant's ability to defend are considered, they do not weigh heavily in defendant's favor.").

674

■ We next consider the issue of prejudice. Defendant bears the burden of showing that he suffered actual prejudice as a result of the state's delay. *State v. Dunn*, 123 Or App 288, 292, 859 P2d 1169, *rev den*, 318 Or 459 (1993). Generally, three types of prejudice might result from pretrial delay: excessive pretrial detention, anxiety, and the impairment of a defendant's defense. *Harman*, 179 Or App at 617. " 'Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Ivory*, 278 Or at 507 (quoting *Barker v. Wingo*, 407 US 514, 532, 92 S Ct 2182, 33 L Ed 2d 101 (1972)).

Defendant does not offer, nor do we find, any support for the notion that his detention for 40 days between indictment and trial was, under the circumstances of this case, excessive. *See State v. Vasquez*, 177 Or App 477, 487, 34 P3d 1188 (2001), *rev allowed*, 334 Or 190 (2002) (holding that "there was no meaningful pretrial incarceration" where the defendant had been in custody for more than four months); *see also* ORS 136.290(1) ("[A] defendant shall not remain in custody pending commencement of the trial of the defendant more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant."). We decline to hold that defendant suffered prejudice simply because of the duration of his pretrial detention.

Furthermore, defendant has not shown that any anxiety that he might have suffered caused actual prejudice. "[T]he ordinary stress and anxiety that accompan[y] any criminal prosecution" are not, by themselves, sufficient to show prejudice. *Harman*, 179 Or App at 620; *see also State v. Dykast*, 300 Or 368, 378, 712 P2d 79 (1985) ("We are not convinced, however, that the defendant's additional anxiety and stress [resulting from a 13-month delay between indictment and trial] were so great as to require dismissal."); *State v. Koennecke*, 29 Or App 637, 648, 565 P2d 376 (1977) ("Although defendant is prejudiced in some measure by living for nearly four years under a cloud of suspicion and anxiety, this prejudice is not sufficient to support defendant's claim he was denied the right to a speedy trial."). Defendant has not shown that he suffered any anxiety beyond what would normally be expected from a criminal prosecution.

Finally, and most significantly, defendant does not contend that his ability to defend himself was impaired. In light of the reasons for the delay and the lack of prejudice to defendant, we conclude that he was not denied a speedy trial in violation of Article I, section 10.[7]

We turn to defendant's claim under ORS 135.747, which provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In *State v. Emery*, 318 Or 460, 470, 869 P2d 859 (1994), the Supreme Court held that "ORS 135.747 does not require a defendant to make a showing of prejudice." We therefore consider only whether the delay was unreasonable. As with our constitutional analysis, we consider only the delay for which the state bears responsibility—from July 27 to September 5, 2000. As discussed above, neither we nor the Supreme Court have ever held that a delay of 40 days is inherently unreasonable. We decline to do so here.

In summary, the trial court did not err in concluding that defendant was not deprived of his statutory and constitutional rights to a speedy trial.

■ We turn to defendant's second assignment of error. Defendant argues that the trial court should have granted his motion for a mistrial after the state elicited Zollner's testimony that he had threatened her. He contends that the evidence was irrelevant and that its prejudicial effect substantially outweighed its probative value, which, he reasons, was low because Zollner had not been questioned as to why she had taken so long to report the shooting incident. The state responds, first, that defendant failed to preserve the error because his motion for mistrial was untimely. The state further argues that the questioning did not warrant a mistrial

---

[7] Because we conclude that defendant suffered no prejudice under Article I, section 10, it follows that his rights under the Sixth Amendment also were not violated. *See State v. Kirsch*, 162 Or App 392, 400, 987 P2d 556 (1999).

because Zollner's testimony was relevant and properly admitted to explain her delay in reporting the incident.

**10.** We agree with the state that defendant failed to preserve the alleged error. "To preserve error, a motion for a mistrial must be timely. It is timely if it is made when the allegedly objectionable statement was made." *State v. Williams*, 322 Or 620, 631, 912 P2d 364, *cert den*, 519 US 854 (1996). In *State v. Walton*, 311 Or 223, 247-48, 809 P2d 81 (1991), immediately after the prosecutor elicited objectionable testimony, the defendant objected and asked that the testimony be stricken; however, he did not move for a mistrial until after two other witnesses had testified about unrelated subjects. The Supreme Court declined to review the trial court's denial of the motion, stating that the motion had been untimely. *Id.* at 248. In *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997), on the other hand, the court found that the defendant had adequately preserved the error:

> "[D]efendant moved for a mistrial *immediately* after he finished discussing with the judge the hearsay rulings and after he conferred with his legal advisers. The discussion that took place after the prosecutor's disputed comment, but before defendant's motion for a mistrial, encompassed less than two pages of the trial transcript. In the period of time between the prosecutor's comment and defendant's motion, there was no significant lapse of time, no additional testimony, no recess, and no discussion of another issue. A motion for mistrial made in those circumstances is timely."

(Emphasis in original.)

This case is more like *Walton* than *Larson*. By the time defendant asked the court to declare a mistrial, the prosecutor had finished direct examination, defendant's counsel had cross-examined Zollner, the court and counsel had conferred about a scheduling matter, the court had called a recess, and the court and counsel had discussed whether Zollner's attorney should testify. True, defendant's counsel asked the court for permission to approach the bench immediately after Zollner gave the challenged testimony. The court later stated that, during the ensuing unrecorded bench conference, defendant's counsel timely objected to Zollner's testimony that defendant had threatened her. However, at

that point, defendant also had a reasonable opportunity to move for a mistrial. The record does not reflect that he did so, and his later motion for mistrial was untimely. Accordingly, we do not reach the merits of defendant's argument.

 In his third assignment of error, defendant contends that the trial court erred in imposing a 10-year sentence for his conviction for unlawful use of a weapon. ORS 161.610(4)(b) provides for a mandatory minimum term of 10 years' imprisonment upon conviction of a felony involving the defendant's use or threatened use of a firearm "committed *after punishment pursuant to paragraph (a)* of [ORS 161.610(4)]." (Emphasis added.) In order to have been so punished, defendant must have previously been sentenced to a "gun minimum" sentence *under that statute*. Although defendant stipulated at trial that he had been convicted of a felony involving the use of a firearm, that conviction occurred in Virginia. Accordingly, defendant had not been punished "pursuant to paragraph (a)" of ORS 161.610(4). The state concedes that the trial court erred in imposing a 10-year prison sentence, and we accept the state's concession. *Cf. State v. Flicker*, 185 Or App 666, 668, 60 P3d 1155 (2003) (accepting state's concession that trial court erred in imposing sex offender treatment as a condition of probation where the defendant's Colorado conviction for sexual assault did not constitute a previous conviction of a "sex offense under ORS 163.305 to 163.467," as required by ORS 137.540(1)(m)). On remand, the trial court shall resentence defendant as provided in ORS 161.610(4)(a).

 In his final assignment of error, defendant argues that the trial court erred in imposing consecutive sentences for his convictions. Defendant asserts that there was no evidence that his unlawful use of a weapon "caused or created a risk of causing greater or qualitatively different loss, injury or harm" than was caused or threatened by his being a felon in possession of a firearm. *See* ORS 137.123(5)(b). Specifically, defendant contends that the state "would have needed to produce evidence that the defendant intended to do more than just unlawfully use a firearm by firing it toward a building."

■ We review the imposition of consecutive sentences for errors of law appearing on the record. ORS 138.220; *State v. Sumerlin*, 139 Or App 579, 588, 913 P2d 340 (1996). The trial court sentenced defendant under ORS 137.123(5)(b), which provides that a court may impose consecutive sentences for separate convictions arising out of a continuous and uninterrupted course of conduct if the harm or risk of harm caused by each offense was qualitatively different or harmed or threatened to harm different victims. For purposes of the imposition of consecutive sentences under that statute, whether defendant intended to put Summerer in danger is beside the point. Defendant's possession of a firearm was unlawful even before he approached the apartment building. Whatever harm his mere possession of the firearm entailed at that point did not directly involve Summerer. Only when defendant committed the second crime—by opening fire at the apartment building—did the risk of harm to her come about. The evidence plainly shows that a qualitatively different risk of harm arose when the second offense was committed. The trial court did not err in imposing a consecutive sentence for defendant's unlawful use of the firearm.

Convictions affirmed; sentence for unlawful use of weapon vacated; case remanded for resentencing.