Submitted March 29, 2016, affirmed June 7, petition for review denied
November 28, 2017 (362 Or 208)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MICHAEL ANDREW CHELEMEDOS,
*Defendant-Appellant.*

Lane County Circuit Court
201404292; A157452

398 P3d 415

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## TOOKEY, J.

Defendant appeals a judgment of conviction for felony driving under the influence of intoxicants (DUII), ORS 813.011, and driving while suspended (DWS), ORS 811.182. Defendant raises two assignments of error. In his first assignment of error, defendant contends that the trial court erred by denying his motion to dismiss for lack of a speedy trial. In his second assignment of error, defendant contends that the trial court erred by failing to dismiss the DWS count because the statute of limitations period had expired. For the reasons that follow, we affirm.

The facts are largely procedural and stem from two separate case numbers. On March 4, 2012, Lane County Sherriff's Deputy Jahn stopped defendant for a headlight violation. Jahn subsequently arrested defendant for DUII and DWS. Defendant had previously been convicted of DUII in Lane County in 2011 and in Washington in 2002.

*Case No 201204608:* On March 5, 2012, the state filed an information alleging that defendant had committed DWS and felony DUII. However, on March 26, the state dismissed the information pending a grand jury indictment. Defendant, who had been held in custody since his arrest, was released upon the state's dismissal of the information.

On November 5, 2012, a grand jury indicted defendant. When defendant did not appear for his arraignment, the trial court issued a warrant for his arrest and defendant was subsequently arrested on the warrant on December 20. Defendant's trial was set for February 13, 2013; however, the day before trial was set to begin, the lead prosecutor sustained injuries in a car accident, and the state moved to postpone the trial. Defendant opposed the state's motion to postpone, arguing that defendant had been in custody since his December 20 arrest. The trial court granted the state's motion to postpone.

On February 15, 2013, at a pretrial hearing, the trial court ruled that evidence regarding defendant's out-of-state Washington DUII conviction was inadmissible and the state requested leave to file an interlocutory appeal. The trial court granted the state's request and ordered defendant

to be released from custody. On April 18, 2013, the state submitted a motion to dismiss the case without prejudice, and the trial court granted that motion.

*Case No 201404292:* On February 28, 2014, the state filed an information containing the same two counts alleged in case number 201204608. At his arraignment on April 14, 2014, defendant was taken into custody. Defense counsel subsequently filed a motion for defendant's release pursuant to ORS 136.290, the 60-day rule.[1] At the hearing on defendant's motion, defense counsel presented evidence that defendant had been detained for 90 days. The trial court ordered defendant to be released.

Defendant subsequently filed a motion to dismiss for lack of a speedy trial. At the trial court's hearing on that motion, defendant testified that the continued delay and repeated incarceration caused him stress and anxiety and that he suffers from high blood pressure. Defendant testified that he felt degraded by the repeated arrests and that he had lost his home, his business, and a "totally restored sports car." Defendant testified that pursuant to his release agreement, he was required to wear an ankle bracelet and get a land-line telephone; defendant acknowledged that he had not actually had the land-line installed. Defendant stated that he felt like he was under scrutiny because the police could arrive at his house "any time they want" to check for alcohol. Defendant testified that, after the state had dismissed the case without prejudice for the second time, he believed that the case had been completely resolved.

The trial court entered an order denying defendant's motion to dismiss. In the trial court's order, the trial court concluded that pursuant to *State v. Ellis*, 263 Or App 250, 328 P3d 720 (2014) (analyzing the statutory speedy trial statute, *former* ORS 135.747), the speedy trial calculation began on the day the last accusatory instrument was

---

[1] ORS 136.290 provides, in pertinent part:

"(1) *** [A] defendant shall not remain in custody pending commencement of the trial of the defendant more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant. ***

"(2) If a trial is not commenced within the period required by subsection (1) of this section, the court shall release the defendant ***."

filed. Accordingly, the trial court found that the information filed on February 28, 2014, triggered the speedy trial clock and consequently, defendant had not been denied his state or federal constitutional right to a speedy trial.

On June 4, 2014, a grand jury indicted defendant for the DUII and DWS offenses committed on March 4, 2012. Following a jury trial, defendant was found guilty of DUII and DWS.

In his first assignment of error, defendant argues that the trial court erred by denying his motion to dismiss for lack of a speedy trial. Defendant contends that the pretrial delay violated his right to a speedy trial under Article I, section 10, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. Defendant asserts that, because the speedy-trial clock commenced when the state filed the first information on March 5, 2012, the delay lasted over two years. Alternatively, defendant contends that the delay "constituted the 298 days during which the state held defendant to answer for" the DUII and DWS charges. In response, the state argues that the total delay was only four months, because the case in which defendant was convicted began with the filing of an information on February 28, 2014. Alternatively, the state contends that the total delay was no more than 10 months, beginning on November 5, 2012, when defendant was first indicted. The state maintains that, under either calculation, the delay did not violate defendant's constitutional speedy trial rights. We need not decide which event commenced the speedy-trial clock in this instance because, in any case, defendant has not demonstrated that he suffered actual prejudice as a result of the delay.

In reviewing a trial court's denial of a defendant's motion to dismiss for lack of a speedy trial,

"[t]his court is bound by a trial court's findings of historical fact if there is evidence in the record to support them. Accordingly, the trial court's findings of fact concerning the length and reasons for the delay, as well as the type, level, and cause of any anxiety that defendant suffered, are binding if supported by evidence. How those findings of historical fact factor into the constitutional analysis presents a question of law."

*State v. Johnson*, 342 Or 596, 608, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008) (citations omitted).

Article I, section 10, provides, in part, that "justice shall be administered * * * without delay[.]" Under Article I, section 10, "the factors to be considered in evaluating the usual speedy trial claim are: (1) the length of the delay, (2) the reasons for the delay and (3) the resulting prejudice to the accused." *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987). The first factor—the length of the delay—"serves as a triggering mechanism. If the time taken to bring an accused to trial is substantially greater than the average, inquiry into the remaining two factors is triggered." *Id.* at 23-24. On the other hand, if the delay is "manifestly excessive and unreasonable" such that it "shocks the imagination and conscience," the delay is presumptively prejudicial. *State v. Chinn*, 115 Or App 662, 665, 840 P2d 92 (1992) (quoting *Mende*, 304 Or at 25). Consequently, "in the absence of a presumptively prejudicial delay, a defendant must demonstrate actual prejudice to warrant the extreme remedy of dismissal of charges." *State v. Bayer*, 229 Or App 267, 280, 211 P3d 327, *rev den*, 347 Or 446 (2009).

In determining the length of the delay, the Oregon Supreme Court has held that, for purposes of Article I, section 10, "an official action that is sufficient, standing alone, to commence a prosecution starts the running of the 'without delay' clock." *State v. Vasquez*, 336 Or 598, 610, 88 P3d 271 (2004). However, "[w]hether a charging instrument that was later dismissed 'commenced' a prosecution for constitutional speedy trial purposes, is unclear." *Bayer*, 229 Or App at 280.

As noted, because defendant has not demonstrated that he suffered actual prejudice as a result of the delay, we need not decide which event, noted above, commenced the speedy-trial clock. "[P]rejudice can be of three kinds: the damage arising from lengthy pretrial incarceration, the anxiety and public suspicion resulting from public accusation of a crime, and the hampering of the ability to defend at trial." *State v. Harberts*, 331 Or 72, 93, 11 P3d 641 (2000) (citing *State v. Ivory*, 278 Or 499, 507-08, 564 P2d 1039 (1977)). Of the three types of prejudice, "the most serious is the last,

because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Ivory*, 278 Or at 507 (internal quotation marks omitted). A defendant bears the burden of showing that he suffered actual prejudice as a result of the state's delay. *State v. Hilton*, 187 Or App 666, 674, 69 P3d 779 (2003), *rev den*, 336 Or 377 (2004).

Here, defendant does not contend that the delay affected his ability to defend himself at trial. Instead, he argues that he was prejudiced by the delay because his pretrial incarceration was excessive under ORS 136.290, which provides that a defendant may not be held in custody for more than 60 days after the time of his arrest. However, ORS 136.290 only provides a mechanism for a defendant to obtain release after being held 60 days; it does not entitle a defendant to dismissal of charges against him, nor does it provide that any incarceration beyond 60 days is necessarily prejudicial. *See* ORS 136.290(2) ("If a trial is not commenced within [60 days after the arrest] * * * the court shall release the defendant * * *.").

Defendant also contends that he suffered prejudice stemming from the combination of anxiety and stress and pretrial incarceration. In support of that argument, defendant relies on his testimony that he lost his job, his house, and his restored sports car as a result of the arrests, and that he was required to get an ankle bracelet and a land-line telephone as a result of his release agreement. Defendant maintains that his stress was exacerbated by the state's decision to dismiss, recharge, and detain defendant on three occasions for the same charges. However, defendant also testified that after the dismissal of case number 201204608, he thought the case had been completely resolved; thus, defendant's anxiety was limited to the time where he was actually aware of the criminal charges he was facing, and not the entire span of the challenged delay. Defendant has not shown that his anxiety caused actual prejudice that would warrant dismissal of the charges. *See State v. Dykast*, 300 Or 368, 378, 712 P2d 79 (1985) (holding that defendant's claim that "he suffered additional anxiety, stress, and interference with his work" did not warrant dismissal of the charges because "[m]ost criminal prosecutions cause stress, discomfort and interference with normal life"); *State v.*

*Fleetwood*, 186 Or App 305, 319-20, 63 P3d 42 (2003) (holding that defendant's claim that he suffered prejudice in the form of substantial stress and anxiety, lost opportunities for employment, job training, housing, and travel, stress in his personal relationships, and onerous supervision conditions, did not warrant dismissal under Article I, section 10).

For those reasons, we conclude that defendant was not denied a speedy trial in violation of Article I, section 10.[2]

We turn to defendant's second assignment of error, in which he asserts that the trial court erred by failing to dismiss the DWS count because the statute of limitations period had expired. Defendant acknowledges that his claim of error is unpreserved but asks us to review and correct the error as "plain error." ORAP 5.45(1). In response, the state argues that defendant waived his right to rely on a statute of limitations defense because he failed to raise that defense by demurring to the indictment. We agree with the state that defendant, by failing to bring the statute of limitations defense to the trial court's attention, waived his right to rely on that defense for the first time on appeal; as a result, we decline to review defendant's unpreserved claim of error. *See State v. Bowers*, 117 Or App 535, 536, 842 P2d 819 (1992), *rev den*, 315 Or 643 (1993) (declining to review the defendant's claim of error that the indictment was subject to demurrer on the ground that the statute of limitations had expired when defendant raised that issue for the first time on appeal); ORS 135.520 (if a motion to set aside the indictment is not made at the time of the arraignment or within 10 days thereafter, "the defendant is precluded from afterwards taking objections to the indictment").

Affirmed.

---

[2] In light of our conclusion that defendant suffered no prejudice under Article I, section 10, we also conclude that his rights under the Sixth Amendment also were not violated. *See Ivory*, 278 Or at 504; *Hilton*, 187 Or App at 675 n 7 (equating the speedy trial right granted by Article I, section 10, with the Sixth Amendment to the United States Constitution).