Argued and submitted May 8, 2019; convictions on Counts 2, 4, and 5 reversed and remanded, otherwise affirmed February 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LEVI GARRETT BARDEN,
*Defendant-Appellant.*

Lane County Circuit Court
17CR27975; A165592

481 P3d 359

Defendant appeals a judgment of conviction on counts of driving under the influence of intoxicants (DUII), ORS 813.011 (Count 1); reckless driving, ORS 811.140 (Count 2); misdemeanor driving while suspended or revoked, ORS 811.182(4) (Count 3); and two counts of recklessly endangering another person, ORS 163.095 (Counts 4 and 5). On appeal, he raises three assignments of error: first, that trial court erred when it admitted testimony that defendant's performance on the walk-and-turn test "validated" the officer's belief that defendant was intoxicated; second, that the trial court erred when it denied defendant's motion for mistrial; third, that the trial court erred in admitting recordings of jail calls made by defendant because the state failed to establish the authenticity of the recordings. Defendant also raises five supplemental assignments of error challenging nonunanimous verdicts for Counts 2, 4, and 5, which are controlled by *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020). The state concedes these supplemental errors. *Held*: Defendant's first two assignments of error were rejected without discussion and the state's concession to the supplemental errors were accepted. Regarding defendant's third assignment of error, under *State v. Sassarini*, 300 Or App 106, 126, 452 P3d 457 (2019), OEC 901(1) represents a "flexible approach to authentication" that simply "requires the proponent of evidence to establish a *prima facie* case of authenticity," *i.e.*, "evidence sufficient to support a finding that the matter in question is what its proponent claims." (Emphasis and internal quotation marks omitted.) Though *State v. Miller*, 6 Or App 366, 369-70, 487 P2d 1387 (1971) sets out a list of factors for authentication, these are not rigid. Proponents need not satisfy each one; rather, authenticity is judged under the totality in each case. Here, the officer's testimony regarding the recording was sufficient to meet the state's *prima facie* authenticity burden under OEC 901.

Convictions on Counts 2, 4, and 5 reversed and remanded; otherwise affirmed.

Mustafa T. Kasubhai, Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Landau, Senior Judge.

JAMES, J.

Convictions on Counts 2, 4, and 5 reversed and remanded; otherwise affirmed.

**JAMES, J.**

Defendant appeals a judgment of conviction on counts of driving under the influence of intoxicants (DUII), ORS 813.011 (Count 1); reckless driving, ORS 811.140 (Count 2); misdemeanor driving while suspended or revoked, ORS 811.182(4) (Count 3); and two counts of recklessly endangering another person, ORS 163.095 (Counts 4 and 5). On appeal, he raises three assignments of error and five supplemental assignments of error.

In defendant's supplement assignments of error, he challenges his convictions by less than unanimous verdict. Defendant requested that the court instruct the jury that it had to unanimously agree on a verdict. The trial court declined, instructing the jury, "This being a criminal case, 10 or more jurors must agree on your verdict." Defendant excepted to the trial court's instructions and requested a jury poll which indicated that the verdicts on Counts 2, 4, and 5 were nonunanimous but that those on Counts 1 and 3 were unanimous. The state concedes that defendant's convictions on Counts 2, 4, and 5 require reversal pursuant to *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We accept the state's concession and reverse those counts. Defendant's arguments as to Counts 1 and 3, which resulted in unanimous convictions, are foreclosed by *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020) (holding that the trial court's receipt of jury's nonunanimous guilty verdict was plain error).

As to defendant's assignments of error not raised in his supplemental brief, we reject his first and second assignments of error without discussion and write only to address the third. There, defendant challenges the trial court's admission, over objection, of recordings of jail calls made by defendant. Defendant argues that the state failed to establish the authenticity of the recordings. We affirm.

We review a trial court's OEC 901 ruling to determine whether there was sufficient evidence for the court to have submitted the issue of authenticity to the finder of fact. *State v. Park*, 140 Or App 507, 511, 916 P2d 334, *rev den*, 323 Or 690 (1996). Thus, we summarize the testimony and

other evidence presented to the trial court to establish the authenticity.

The state sought to introduce electronic recordings of calls involving defendant while defendant was incarcerated in the local jail using a system called "Telmate." To establish authenticity of the calls, the state offered testimony by the investigating officer, Jones, who had obtained the calls from the Telmate system.

Jones testified that once he had access to the jail call records, he reviewed them "to see if [defendant] had made any calls while in custody at the jail and found that he had." That testimony prompted the following:

"[PROSECUTOR]: Based on your review of the records, what did you find?

"[DEFNSE COUNSEL]: Again, objection. Authentication, foundation.

"THE COURT: Overruled.

"[JONES]: I found that [defendant] did make phone calls, starting on May 1st at 9:08 a.m. And his last phone call was on June 29th at 6:09 p.m."

The prosecutor asked how Jones knew the calls were from defendant, and Jones started to testify about Telmate's user interface. Defendant objected, arguing that the state needed to call someone from Telmate who could authenticate the recordings; the trial court overruled the objection:

"[PROSECUTOR]: And how do you know that they were calls made by the defendant?

"[JONES]: I know from training and experience that the jail uses a digital system that they contract with a company called Telmate and that the user, or the inmate, is required to authenticate their voice and enter a PIN number prior to utilizing the system and making a phone call.

"[DEFENSE COUNSEL]: Your Honor, again, objection. Authentication. I think they need somebody from Telmate to authenticate these calls."

After the trial court overruled the objection, defense counsel asked to make a further record. During that offer of proof, Jones testified that "[a] representative

from Telmate trained [him] *** on the use and the capabilities of their system" but that he did not know "how their software is designed or developed or the internal workings of it ***." He explained that he knew that the system uses a voice-recognition program which automatically populates the date and time and requires that each prisoner enter a unique pin. He also testified that end-users could not alter or manipulate the recordings before making a copy of them.

Jones testified that he recognized defendant's voice on the recording he heard based on his prior contact with defendant. He explained that he had "previously heard [defendant's] voice" and that "this recording is a near likeness or *** identical to [defendant]." He testified further that, when prisoners use the system, the system captures the prisoner's image. The image for those calls, he explained, "matche[d] [defendant]."

Following that offer of proof, defendant renewed his objection, arguing that Jones could not authenticate the recordings because he was not associated with Telmate and could not testify about the accuracy or completeness of the recordings:

> "[DEFENSE COUNSEL]:   Your Honor, I'll—I'll renew my objection here. This is kind of like having the patrol officer verify the 9-1-1 call. I don't think that can be done.
>
> "He's not the business record person, he's not the programmer person *** he can't authenticate any of the steps between a phone call being made and what he's produced for the state."

Ultimately, the trial court denied the objection, defendant was convicted, and this appeal followed. On appeal, defendant renews his authenticity argument. Defendant concedes that the state provided evidence establishing defendant's identity on the call, including the officer recognizing his voice. But defendant argues that further evidence was required to show that the Telmate system "captured and stored a full, fair, and accurate recreation of the calls." According to defendant, Jones could not offer such testimony because he was an "end user" of Telmate, and he

was unqualified to offer testimony that "the Telmate system had accurately and completely captured the calls when they were being made and that the recordings had not been altered while being stored."

OEC 901 governs the authentication requirements for the admission of evidence at trial. It provides:

"(1)  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(2)  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of subsection (1) of this section:

"(a)  Testimony by a witness with knowledge that a matter is what it is claimed to be.

"* * * * *

"(i)  Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result."

We recently addressed the requirements to authenticate a recording in *State v. Sassarini*, 300 Or App 106, 452 P3d 457 (2019). There, we observed that OEC 901(1) represents a "flexible approach to authentication" that simply "requires the proponent of evidence to establish a *prima facie* case of authenticity—'evidence *sufficient to support a finding* that the matter in question is what its proponent claims.'" *Id.* at 126 (emphasis in original). In evaluating whether a proponent has carried that burden, we explained that the legislature intended for courts to consider the traditional requirements for authenticating a recording: a showing that (1) the recording device was capable of taking testimony; (2) the operator of the device was competent; (3) the recording is accurate; (4) the recording has not been changed, added to, or deleted from; (5) the recording was adequately preserved; (6) the actors or speakers can be identified; and (7) the testimony elicited was voluntarily made without any kind of inducement. *Id.* (citing *State v. Miller*, 6 Or App 366, 369-70, 487 P2d 1387 (1971)).

The *Miller* factors incorporated into OEC 901 are not a catechism. To meet the *prima facie* requirements of authentication, the *Miller* factors are not "irrelevant," but they are also not "rigid" or "demanding." *Sassarini*, 300 Or App at 126. And, although the legislature intended for courts to consider these requirements, it did not intend proponents to have to satisfy each one. *Id.* Rather, the traditional requirements serve as factors for a court to consider in assessing the totality of whether a proponent has made out a *prima facie* case of authenticity. *Id.* The standard is not whether the proponent has conclusively proven authenticity, but rather whether the proponent has presented some "evidence sufficient to support a finding that the matter in question is what its proponent claims" so as to admit the evidence to the jury—for the jury remains the ultimate arbiter on authenticity, veracity, and reliability of evidence.

Here, the officer's testimony regarding the Telmate call was sufficient to meet the state's *prima facie* authenticity burden under OEC 901. While the state certainly could have offered testimony from a representative of Telmate, OEC 901 does not require such testimony. In many respects, this case is similar to *Miller*. There, the defendant made two tape-recorded statements, which were admitted after the detective who took the statements testified that they accurately related what was said. *Miller*, 6 Or App at 369. *Miller* then went on to consider the detective's testimony under the seven-factor test described above, concluding that it was sufficient to send the question of the accuracy of the tapes to the jury. *Id.* at 370-71. To meet its *prima facie* burden in *Miller* the state was not obligated to produce testimony from the manufacturer of the recording device used. The Telmate system is the recording device applicable here. And, as in *Miller*, testimony from the manufacturer of a recording device is not a *per se* requirement to meet the *prima facie* burden of authenticity sufficient to send the evidence to the jury. Authenticity is judged under the totality in each case, so we do not foreclose the possibility that, in a certain factual scenario, testimony by someone familiar with the internal workings of a recording device might be necessary. But here, on this record, the state met its *prima facie* burden to establish that the recordings were what they purported to

be—calls involving defendant. Accordingly, the trial court did not err in admitting them.

Convictions on Counts 2, 4, and 5 reversed and remanded; otherwise affirmed.