736 April 16, 2025 No. 337

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN CARL DAHLIN,
*Defendant-Appellant.*

Clackamas County Circuit Court
20CR25586; A178822

Jeffrey S. Jones, Judge.

Submitted April 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Remanded for resentencing; otherwise affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for one count of first-degree sodomy, ORS 163.405, five counts of first-degree sexual abuse, ORS 163.427, and one count of third-degree sexual abuse, ORS 163.415, for conduct against his siblings. On appeal, defendant raises four assignments of error. First, he argues that the trial court erred when it admitted an unauthenticated letter that was protected by the clergy-penitent privilege, OEC 506. In his second and third assignments of error, he argues that the trial court plainly erred by failing to dismiss certain charges that the state prosecuted outside the statute of limitations. Finally, he argues that the trial court plainly erred by imposing a life-term of post-prison supervision (PPS). We conclude that the trial court did not err in determining that the letter was properly authenticated and that the clergy-penitent privilege did not apply. We further conclude that defendant's failure to raise the statute of limitations defense to the trial court foreclosed his ability to raise it on appeal. However, we conclude that the court plainly erred by imposing a life-term of PPS, and we exercise our discretion to correct the error. Accordingly, we remand for resentencing and otherwise affirm.

*Letter evidence.* In his first assignment of error, defendant argues that the trial court erred in admitting a letter that police found on a church computer. Specifically, defendant argues that the state offered insufficient evidence to authenticate the letter under OEC 901 and that it was protected under the clergy-penitent privilege, OEC 506. We address each argument in turn.

"We review whether a trial court properly admitted evidence under OEC 901 to determine whether there was sufficient evidence to support the issue of authenticity to the factfinder." *State v. Hurtado*, 335 Or App 560, 563, 558 P3d 1267 (2024).

Here, the disputed letter was addressed to "S" and was dated February 2009. The letter identified instances of sexual abuse that the author had committed against the author's siblings and named a specific person who had

defendant's sister's name. The letter was signed with defendant's first name. At the suppression hearing, the pastor who served at defendant's church in 2009 testified that defendant likely wrote the letter as part of the confessional process to help defendant atone for his sins against S and her parents. According to the pastor—whose name was not S— defendant intended to communicate the letter's "contents" with S. The pastor further testified that, to his knowledge, neither S nor her parents were pastors.

We conclude that the trial court did not err. OEC 901(1) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The state's evidence—which included the letter's contents and testimony about where it was found—was sufficient to support "a *prima facie* case of authenticity" for three reasons. *Hurtado*, 335 Or App at 565. First, the letter was signed by an individual with the same first name as defendant. Second, the letter identified instances of sexual abuse against several individuals and specifically named an individual with the same name as defendant's sister. Third, police found the letter on a computer server, and the computer belonged to a church that defendant's family attended. Thus, the trial court did not err in concluding that the letter was authenticated. *See State v. Barden*, 309 Or App 87, 93, 481 P3d 359, *rev den*, 368 Or 511 (2021) ("The standard is not whether the proponent has conclusively proven authenticity, but rather whether the proponent has presented some 'evidence sufficient to support a finding that the matter in question is what its proponent claims' so as to admit the evidence to the jury[.]" (Quoting OEC 901(1).)); *see also Hurtado*, 335 Or App at 566 (observing that OEC 901 "codified a more flexible approach to authentication" (internal quotation marks omitted)).

Turning to defendant's argument concerning OEC 506(2), "[w]e review for errors of law the trial court's determination that no privilege applied in this case." *State v. Langley*, 314 Or 247, 263, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993).

We conclude that the trial court did not err. OEC 506(2) applies only when a communication is confidential. OEC 506(2) ("A member of the clergy may not be examined as to any confidential communication made to the member of the clergy in the member's professional character unless consent to the disclosure of the confidential communication is given by the person who made the communication."); OEC 506(1)(a) ("'Confidential communication' means a communication made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication."). A "speaker's intent that a communication be kept confidential can be inferred from the circumstances surrounding the communication." *State v. Cox*, 87 Or App 443, 446, 742 P2d 694 (1987). As explained above, both defendant's pastor and defendant intended that defendant share the letter with S, a person who was not a church pastor. Given those circumstances, the trial court did not err in determining that defendant did not intend the letter to be confidential. *Cf. id.* at 446 (concluding that communication between the defendant's clergyman and the defendant was confidential because both parties intended to "keep the conversation confidential," and the clergyman assured the defendant that he would "not share it with your wife or your bishop or anybody else").

*Statute of limitations.* In his second and third assignments of error, defendant contends that the trial court erred in failing to dismiss Counts 2, 7, and 8 because the state did not prosecute those offenses within the statute of limitations. Defendant acknowledges that his arguments are unpreserved and requests plain-error review. Although the state concedes that it brought Count 8 outside the statute of limitations, defendant's unpreserved arguments are foreclosed by *State v. Chelemedos*, 286 Or App 77, 83, 398 P3d 415, *rev den*, 362 Or 208 (2017) (declining to review the defendant's unpreserved argument because he had "waived his right to rely on that defense for the first time on appeal" after "failing to bring the statute of limitations defense to the trial court's attention"). Further, we are unpersuaded by defendant's arguments that *Chelemedos* is distinguishable or wrongly decided.

*PPS term.* In his final assignment of error, defendant contends that the trial court plainly erred "in imposing a life-term of PPS" on his conviction for first-degree sodomy, ORS 163.405, "because defendant was under the age of 18 when he committed the offense." The state concedes that the court erred because it "found that defendant was under 18" and that the "error requires a remand for resentencing."

For an error to be plain, it must be (1) one of law, (2) obvious and not reasonably in dispute, and (3) apparent on the record without requiring the court to choose among competing inferences. *State v. Ortiz*, 372 Or 658, 664, 554 P3d 796 (2024). If we conclude that an error is plain, then we must "determine whether to exercise [our] discretion to review the error." *State v. Vanornum*, 354 Or 614, 630, 317 P3d 889 (2013).

Here, the record lacks clarity as to whether defendant was over or under the age of 18 when he committed the crime in question. The record establishes that defendant was born May 24, 1985. In convicting defendant under ORS 163.405, the court entered a judgment finding that defendant committed the act of sodomy "on or between 01/01/2003 and 12/31/2007." At sentencing, the court stated:

> "Count one is Sodomy in the First Degree and the Court finds the defendant guilty of that charge and the Court makes a specific *** finding that the defendant was at least 15 years of age when that happened and he may very well have been 17, 18, 19 years old but I'm—the level of certainty is certainly there to make a finding of that he was at least 15 years old."

Thus, we disagree with the parties that the court found that defendant was under 18 years of age when he committed the crime.

However, to impose a lifetime term of PPS under ORS 144.103, the defendant must have been "at least 18 years of age" when he committed the crime. *See* ORS 144.103(2)(a) (providing that "[a] person sentenced to a term of imprisonment" for certain offenses, including ORS 163.405(1)(b), "shall serve a term of post-prison supervision that continues for the rest of the person's life if the person was at least 18 years of age at the time the person committed the crime.").

Here, the record does not establish that the court made the necessary finding as to that element, which was required before the court could impose a lifetime PPS term. Instead, the court's specific findings at sentencing were that the court had a "level of certainty" that defendant was "at least 15 years old." Those findings leave open the possibility that defendant was under 18 years of age when he committed first-degree sodomy. Accordingly, we conclude that the legal error is "obvious," "not reasonably in dispute," and "apparent on the record." *Ortiz*, 372 Or at 664. Therefore, the court plainly erred in imposing a lifetime term of PPS.

Further, we exercise our discretion to correct the error. That determination is a "prudential call that takes into account an array of considerations," including the "competing interests of the parties, the nature of the case, the gravity of error, and the ends of justice in the particular case." *Vanornum*, 354 Or at 630. Here, those considerations weigh in favor of correcting the error. *See State v. Johnson*, 220 Or App 504, 507-08, 187 P3d 742 (2008) (exercising our discretion to correct an unpreserved sentencing error when the parties agreed that we should correct the error, the defendant had no strategic reason not to object, and the gravity of error resulted in sentences that were greater than the statutory maximums for each offense). Accordingly, we remand for resentencing.

Remanded for resentencing; otherwise affirmed.